HOLLOWAY DRILLING EQUIPMENT, INC., ET AL.

VERSUS

DANIELLE BODIN, ET AL.

**********

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. C-20101717
HONORABLE DURWOOD W. CONQUE, DISTRICT JUDGE

**********

**MARC T. AMY
JUDGE**

**********

Court composed of John D. Saunders, Marc T. Amy, and J. David Painter, Judges.

**AFFIRMED.**

**Saunders, J., dissents and assigns written reasons.**

**William E. Wright, Jr.
Charlotte C. Meade
Deutsch, Kerrigan & Stiles, L.L.P.
755 Magazine Street
New Orleans, LA   70130-3672
(504) 581-5141
COUNSEL FOR DEFENDANT/APPELLEE:**
    **Inzarella, Feldman, and Pourciau, A Professional Corporation**

**Steven Charles Lanza
Onebane Law Firm
Post Office Box 3507
Lafayette, LA   70502-3507
(337) 237-2660
COUNSEL FOR DEFENDANT/APPELLEE:**
    **Iberia Bank Corporation**

**L. Clayton Burgess**
**605 W. Congress Street**
**Lafayette, LA   70501**
**(337) 234-7573**
**COUNSEL FOR PLAINTIFFS/APPELLANTS:**
**Holloway Drilling Equipment, Inc.**
**Holloway Rentals, Inc.**

**John Kevin Stockstill**
**102 Versailles Boulevard, Suite 310**
**Lafayette, LA   70501**
**(337) 262-0203**
**COUNSEL FOR DEFENDANTS/APPELLEES:**
**Kyle Bodin**
**Butterfly Bodies**

**AMY, Judge.**

The plaintiffs brought this action alleging that their former bookkeeper embezzled approximately 1.7 million dollars from company accounts. As relevant to this appeal, the plaintiffs amended their suit to name their former accounting firm and one of the accounting firm's employees as defendants, alleging that the employee participated in the fraud. The plaintiffs also contended that the accounting firm knew about the embezzlement. The accounting firm brought exceptions of res judicata and prematurity, contending that the plaintiffs had previously signed a release of all claims against the firm and that the matter had not been submitted to a public accountant review panel. The trial court granted the exception of res judicata and found that the exception of prematurity was moot. This appeal followed. For the following reasons, we affirm.

### Factual and Procedural Background

According to the record, one of the defendants, Danielle Bodin,[1] was employed by the plaintiffs, Holloway Drilling Equipment, Inc. and Holloway Equipment Rentals, Inc. (collectively, "Holloway"), for many years as their bookkeeper. In 2010, Holloway discovered that Ms. Bodin embezzled approximately 1.7 million dollars from company accounts. The record indicates that Ms. Bodin was prosecuted criminally for the theft, and that, as of the date of her sworn statement, she pled guilty to at least one count and was awaiting sentencing.

Holloway subsequently brought this suit against Ms. Bodin and several other defendants. Holloway also amended its suit to add additional defendants, including its former accounting firm, Inzarella, Feldman, and Porciau, A Professional Corporation (the "Inzarella Firm"), and one of the Inzarella Firm's former employees, Eric Broussard. Holloway alleges that Mr. Broussard participated in the

---

[1] Ms. Bodin is also referred to as Danielle Pellerin Guidroz and Danielle Bodin Guidroz in the record. We use the name contained in the petition.

embezzlement scheme by assisting Ms. Bodin in covering up her theft, as well as profiting personally by receiving cash advances and other funds from Ms. Bodin's credit card. Further, Holloway contends that Mr. Broussard sent inflated invoices from the Inzarella Firm to Holloway. Additionally, Holloway alleges that the Inzarella Firm is liable for damages because Mr. Broussard was acting in the course and scope of his employment.

The Inzarella Firm filed exceptions of res judicata and, alternatively, prematurity. In support of this contention, the Inzarella Firm produced a receipt and release which purports to "acquit and forever discharge each other party, . . . from any and all actions, causes of action, or claims of every character, nature and kind whatsoever, known or unknown, past, present and future and all related expenses in connection with or arising from the relationship previously existing between the parties." The Inzarella Firm argues that the receipt and release precludes Holloway from pursuing the pending action against it. Alternatively, the Inzarella Firm contends that this action is premature because it has not been submitted to a public accountant review panel, as required by La.R.S. 37:102 and La.R.S. 37:105. Holloway objects, contending that the release was only intended to address a single disputed bill. Further, Holloway alleges that the Inzarella Firm knew of Mr. Broussard's fraud and that therefore the release should be vitiated. Holloway does not contest the exception of prematurity.

At a hearing, the parties introduced evidence concerning the intent of the parties with regard to the release and receipt and concerning the Inzarella Firm's knowledge of Ms. Bodin and Mr. Broussard's alleged criminal activities. The trial court found that the disputed bill is what precipitated the release and receipt. However, the trial court determined that it could not discount the broad release language found in the document. Because the trial court did not find that Holloway had proven that the

2

receipt and release was vitiated by fraud, the trial court granted the Inzarella Firm's exception of res judicata. Further, the trial court held that the exception of prematurity was moot.

Thereafter, Holloway filed a motion for new trial, alleging that since the hearing on the exception of res judicata, they had obtained the sworn statement of Ms. Bodin. According to Holloway, that statement indicated that Gregory Inzarella, the president of the Inzarella Firm, knew about the embezzlement scheme. After a hearing, the trial court denied the motion for new trial on the basis that Holloway did not establish that the new evidence was unavailable before the original hearing or that the new information would have changed the result of the hearing on the exceptions.

The plaintiffs appeal, asserting as error that:

1. The judge committed legal error in dismissing the exception of prematurity because the claim against Inzarella was not subject to judicial determination yet, as it has not previously been presented to a Certified Public Accountant Review Panel as required by Louisiana law.

2. The judge committed legal error in granting the exception of res judicata pursuant to the Receipt and Release despite the fact that the parties testified that it was not executed with the intent [to] put an end to all future litigation for all matters.

3. The judge committed legal error in dismissing the motion for new trial in this matter despite the fact that new information was identified that could not have been discovered at the time of the trial.

### Discussion

*Res Judicata*

The peremptory exception of res judicata is based on the conclusive legal presumption of a thing previously adjudged between the same parties. *Labiche v. Louisiana Patients' Comp. Fund Oversight Bd.*, 98-2880 (La.App. 1 Cir. 2/18/00), 753 So.2d 376. Although the exception of res judicata typically contemplates the existence of a final judgment on the merits, it also applies where there is a transaction

or settlement of a dispute that has been entered into by the parties. *Ortego v. State, Dept. of Transp. & Dev.*, 96-1322 (La. 2/25/97), 689 So.2d 1358. "A release of claim or claims, when given in exchange for consideration, is a compromise and constitutes the basis for a plea of res judicata." *Labiche*, 753 So.2d at 380.

The burden of proof is on the party asserting the exception to establish that the plaintiffs' claims are res judicata. *Reyes-Ramirez v. Progressive Sec. Ins. Co.*, 08-374 (La.App. 3 Cir. 11/5/08), 996 So.2d 1213, *writ denied*, 08-2877 (La. 2/6/09), 999 So.2d 784. Further, the doctrine is interpreted *stricti juris*; therefore, any doubt with regard to whether its requirements have been met must be resolved in favor of maintaining the action. *Id.* Where the exception is raised before submission of the case and evidence is received from both parties, an appellate court should review a judgment sustaining an exception of res judicata under the manifest error standard of review. *Steckler v. Lafayette Consol. Gov't*, 11-427 (La.App. 3 Cir. 11/2/11), 76 So.3d 161, *writs denied*, 11-2639, 11-2677 (La. 2/10/12), 80 So.3d 477, 487.

"A compromise is a contract whereby the parties, through concessions made by one or more of them, settle a dispute or an uncertainty concerning an obligation or other legal relationship." La.Civ.Code art. 3071. "A release executed in exchange for consideration is a compromise." *Randall v. Martin*, 03-1311, p. 4 (La.App. 5 Cir. 2/23/04), 868 So.2d 913, 915. In *Ortego*, 689 So.2d at 1363-64, the supreme court addressed the interpretation of compromises, stating:

> A compromise instrument is the law between the parties and must be interpreted according to the parties' intent. *Ritchey v. Azar*, 383 So.2d 360, 362 (La.1980). It follows that the compromise instrument is governed by the same general rules of construction applicable to contracts. *Brown* [*v. Drillers, Inc.*, 93-1019 (La. 1/14/94), 630 So.2d 741,] 748.
>
> When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent. [La.Civ.Code] art. 2046. Article 2046 emphasizes that the process involves no *further* interpretation, as opposed to no

4

interpretation at all. *Expose' Des Motifs of the Project of Titles III and IV of Book III of the Civil Code of Louisiana*, p. 67 (1984); R. MacLean, *Judicial Discretion in the Civil Law*, 43 La. L.Rev. 45, 55-56 n. 28 (1982). Because a compromise extends only to those matters the parties intended to settle, the scope of the transaction cannot be extended by implication. [La.Civ.Code] art. 3073;[2] *see* Comment, *Compromise in Louisiana*, 14 Tul. L.Rev. 282, 283 (1940). In applying this rule of construction, courts are guided by the general principle "that the contract must be considered as a whole and in light of attending events and circumstances." *Brown*, 630 So.2d at 748 (citing *Succession of Teddlie*, 385 So.2d 902, 904 (La.App. 2d Cir.), *writ refused*, 393 So.2d 742 (La.1980)).

The meaning and intent of the parties to a written instrument, including a compromise, is ordinarily determined from the instrument's four corners, and extrinsic evidence is inadmissible either to explain or to contradict the instrument's terms. *Dixie Campers, Inc. v. Vesely Co.*, 398 So.2d 1087, 1089 (La.1981); *see also Leenerts Farms, Inc. v. Rogers*, 421 So.2d 216, 218 (La.1982). When a dispute arises as to the scope of a compromise agreement, extrinsic evidence can be considered to determine exactly what differences the parties intended to settle. *Moak v. American Automobile Ins. Co.*, 242 La. 160, 134 So.2d 911 (1961); *see Brown*, 630 So.2d at 749 n. 11.

Holloway contends that the receipt and release was only intended to address claims arising out of a disputed bill. Louisiana Civil Code Article 3076 provides that "[a] compromise settles only those differences that the parties clearly intended to settle, including the necessary consequences of what they express." The 2007 Revision Comment to Article 3076 states that "[t]his Article reproduces the substance of Article 3073 of the Louisiana Civil Code of 1870. It is not intended to change the law."

---

[2] Louisiana Civil Code Article 3073 was amended by the legislature in 2007 and renumbered as La.Civ.Code art. 3076. Former Article 3073 stated:

> Transactions regulate only the differences which appear clearly to be comprehended in them by the intention of the parties, whether it be explained in a general or particular manner, unless it be the necessary consequence of what is expressed; and they do not extend to differences which the parties never intended to include in them.

> The renunciation, which is made therein to all rights, claims and pretensions, extends only to what relates to the differences on which the transaction arises.

Current Article 3076 now states that "[a] compromise settles only those differences that the parties clearly intended to settle, including the necessary consequences of what they express."

Accordingly, a general release will not necessarily bar recovery for those aspects of a claim that were not intended to be covered by the release. *Signal v. Romero*, 09-1078 (La.App. 3 Cir. 3/10/10), 32 So.3d 1126 (citing *Brown v. Drillers, Inc.*, 93-1019 (La. 1/14/94), 630 So.2d 741). This rule is applicable where there is evidence establishing that "either (1) that the releaser was mistaken as to what he or she was signing, even though fraud was not present; or (2) that the releaser did not fully understand the nature of the rights being released or that the releaser did not intend to release certain aspects of his or her claim." *Brown*, 630 So.2d at 749. Where the parties contest the scope of a compromise agreement, the court may consider extrinsic evidence in determining what the parties intended to settle. *Ortego*, 689 So.2d 1358.

However, where the evidence concerning the execution of the release does not indicate that either of those two categories is applicable, "Louisiana courts . . . have not hesitated to confine their analysis to the four corners of the instrument." *Brown*, 630 So.2d at 749. Thus, if the parties to a compromise intended to enter into a release as part of the terms of the compromise, one of the "necessary consequences" of that expression may be a release of future claims, both known and unknown. *See* La.Code Civ. Art. 3076; *State ex rel. Sabine River Auth. v. Meyer & Assoc., Inc.*, 07-214, 07-215 (La.App. 3 Cir. 10/3/07), 967 So.2d 585.

Holloway relies on the supreme court's decision in *Brown*, 630 So.2d 741, wherein the supreme court found that a particular tort settlement did not contemplate a release of wrongful death claims. The supreme court found that the release, which clearly released all of the decedent's personal injury claims, was ambiguous with regard to wrongful death claims as neither party contemplated that the decedent would succumb to his injuries, and, at the time the release was signed, the prevailing jurisprudence was that the parties could not release a future wrongful death action.

6

In contrast, in *State ex rel. Sabine River Auth.*, 967 So.2d 585, a contractor brought a third party demand against several subcontractors seeking indemnification for damages resulting from substandard construction. One of the subcontractors asserted that a previous settlement, which was intended to resolve a payment dispute and which contained a general release, was res judicata between the parties. *Id.* On appeal, a panel of this court upheld the trial court's judgment sustaining the exception, noting that the release was not ambiguous and that "had [the contractor] wanted to prevent its release of unknown future claims, it would not have agreed to release [the subcontractor] from 'any and all future claims[,]'" and that "[i]t is counterintuitive for [the contractor] to agree to this language and then claim its understanding was only to release [the subcontractor] from those future claims it had knowledge would eventually exist." *Id.* at 590.

In support of their exception of res judicata, the Inzarella Firm submitted into evidence a receipt and release signed by "Rickey A. Holloway, President" on behalf of Holloway Drilling Equipment, Inc. on March 23, 2009, and by "Gregory J. Inzarella, President" on behalf of the Inzarella Firm on March 26, 2009. The receipt and release stated, in part:

> WHEREAS, [the Inzarella Firm] has performed professional accounting services for [Holloway] and for which [the Inzarella Firm] has charged [Holloway] the sum of $23,737.99 for said services; and
>
> WHEREAS, [Holloway] has disputed the amount of the said charges; [the Inzarella Firm] does hereby accept the sum of $12,000.00, hereby paid and gives full acquittance for the same and for any further compensation arising out of its performance of professional accounting services heretofore completed.
>
> As consideration thereof, the parties herein specifically release, acquit and forever discharge each other party, their agents, employee and assigns, from any and all actions, causes of action, or claims of every character, nature and kind whatsoever, known or unknown, past, present and future and all related expenses in connection with or arising from the relationship previously existing between the parties.

At the hearing on the exception of res judicata, Mr. Inzarella answered in the affirmative when asked whether "the only issue in your mind . . . at the time this receipt and release was signed was approximately a $10,000 discrepancy in a bill[.]" Further, Mr. Holloway testified that "[w]e had a discrepancy on the bill. That's what it was all about was the discrepancy on the bill." After considering all of the evidence, the trial court stated "I think it's pretty clear that what precipitated this document was that disputed bill[,]" noting that Holloway's witnesses testified that the document was intended to take care of that issue. Further, the trial court noted that "conversations had taken place about the missing money."

We find no error in the trial court's determination that the release was intended to address the disputed bill, especially given the deference due the trial court's factual findings. However, we find the facts of this case more like those of *Meyer & Assoc.*, 967 So.2d 585, than those of *Brown*, 630 So.2d 741. The parties may include a release as consideration for a compromise. *Randall*, 868 So.2d 913. If Holloway had not intended to release unknown future claims, it would not have agreed to release the Inzarella Firm "from any and all actions, causes of action, or claims of every character, nature and kind whatsoever, known or unknown, past, present and future and all related expenses in connection with or arising from the relationship previously existing between the parties." *See Meyer & Assoc.*, 967 So.2d 585. We further observe that the record would support a conclusion that, even before the receipt and release was signed, Holloway was aware that a large sum of money was missing and was suspicious of Ms. Bodin's involvement in its disappearance. Accordingly, we find no error in the trial court's determination that the release and receipt encompassed Holloway's current claims against the Inzarella Firm.

Alternatively, Holloway contends that the Inzarella Firm had knowledge of Ms. Bodin and Mr. Broussard's alleged fraudulent scheme and therefore argues that the

8

receipt and release was vitiated by fraud. "A compromise may be rescinded for error, fraud, and other grounds for the annulment of contracts. Nevertheless, a compromise cannot be rescinded on grounds of error of law or lesion." La.Civ.Code art. 3082. Further, the party seeking to rescind the compromise bears the burden of proof. *Hoover v. Boucvalt*, 99-867 (La.App. 4 Cir. 11/24/99), 747 So.2d 1227, *writ denied*, 99-3610 (La. 2/10/00), 754 So.2d 969. "The district court's findings with respect to a claim of fraud are subject to the manifest error rule." *Ballard's Inc. v. N. Amer. Land Dev. Corp.*, 28,437, p. 5 (La.App. 2 Cir. 6/26/96), 677 So.2d 648, 651 (citing *Winegeart v. Texas Indus. Inc.*, 390 So.2d 265 (La.App. 3 Cir. 1980), *writ denied* 396 So.2d 886 (La.1981)).

At the hearing on the exception, Mr. Inzarella testified that he did not learn about Mr. Broussard's alleged criminal conspiracy with Ms. Bonin until 2010, which was well after the receipt and release was signed. However, Holloway attempted to establish that Mr. Inzarella made statements indicating that he knew about Mr. Broussard's alleged role in the thefts and that Mr. Broussard and Ms. Bonin were having a sexual relationship. Mr. Inzarella testified that Mr. Holloway called "maybe" two years before the receipt and release was signed to express concerns that Ms. Bonin was spending too much money. According to Mr. Inzarella, he advised Holloway to investigate but, as far as he knew, they never did. Mr. Inzarella also denied that another employee of his firm alerted him to a relationship between Mr. Broussard and Ms. Bonin.

Damian Domingue, Holloway's operations manager, testified that he and Mr. Holloway spoke with Mr. Inzarella concerning missing funds and that they told Mr. Inzarella that Ms. Bonin was "living a pretty good lifestyle." According to Mr. Domingue, Mr. Inzarella told them he would look into it and later reported that he did not find any discrepancies. Mr. Domingue also testified that after the receipt and

release was signed, they had a conference call with Mr. Inzarella, Mr. Broussard, and Ms. Bonin. Mr. Domingue's testimony was that Mr. Inzarella stated that Mr. Broussard and Ms. Bonin had a sexual relationship and that they would steal from Holloway. Mr. Holloway also testified about this conversation, but could not remember whether the conversation happened before or after the receipt and release was signed. Mr. Domingue and Mr. Holloway attributed Mr. Inzarella's statement to anger over Holloway transferring its business to Mr. Broussard's new place of business. Mr. Inzarella denied making any of those statements.

Given this testimony, Holloway submitted sufficient evidence which, if accepted by the trial court, would support a conclusion that Mr. Inzarella knew that Holloway was missing a significant sum of money, that Ms. Bonin was suspected in the theft, and that Mr. Broussard and Ms. Bonin had a sexual relationship and were stealing from Holloway. However, Mr. Inzarella denied that Holloway asked him to look into whether Ms. Bonin embezzled funds from Holloway and denied that he told Holloway that Ms. Bonin and Ms. Broussard were "sleeping together, and they're going to steal your money." Accordingly, the record also supports a conclusion that Mr. Inzarella had no knowledge of Ms. Bonin and Mr. Broussard's alleged activities. It was the trial court's prerogative to make findings of fact, and the trial court necessarily had to choose between these two competing versions of the events. Finding support in the record for the conclusion that Mr. Inzarella had no knowledge of the fraud, we find no manifest error in the trial court's determination that Holloway did not satisfy its burden of proof with regard to fraud.

This assignment of error is without merit.

*Prematurity*

Pursuant to La.R.S. 37:102(A), "[a]ll claims against certified public accountants or firms, other than claims validly agreed for submission to a lawfully binding

arbitration procedure, shall be reviewed by a public accountant review panel established pursuant to R.S. 37:109." *See also* La.R.S. 37:105. Holloway concedes that, pursuant to this statute, its claim against the Inzarella Firm should have been submitted to a public accountant review panel. Therefore, Holloway contends that its judicial cause of action had not come into existence and that it was error for the trial court to address the exception of res judicata before addressing the prematurity issue.

The second circuit, in *Steed v. St. Paul's United Methodist Church*, 31,521, 35,522, p. 7 (La.App. 2 Cir. 2/24/99), 728 So.2d 931, 938, *writ denied*, 99-877 (La. 5/7/99), 740 So.2d 1290, addressed the exception of prematurity, stating:

> The exception of prematurity is a dilatory exception intended to retard the progress of the action, not to defeat it. La. C.C.P. arts. 923, 926. A suit is premature if it is brought before the right to enforce the claim sued on has accrued. *Clark v. City of Shreveport*, 26,638 (La.App.2d Cir. 5/10/95), 655 So.2d 617. The exception of prematurity raises the issue of whether the judicial cause of action has yet come into existence because some prerequisite condition has not been fulfilled. *Jones v. Hartford Ins. Co.*, 560 So.2d 442 (La.1990); *Weldon v. Republic Bank*, 414 So.2d 1361 (La.App. 2d Cir. 1982). Prematurity does not defeat the action or the court's jurisdiction. *Jones v. Hartford Ins. Co.*, *supra*.

We note that La.Code Civ.P. art. 929(A) provides that "[t]he declinatory exception, the dilatory exception, and the peremptory exception when pleaded before or in the answer shall be tried and decided in advance of the trial of the case." Further, "[i]t has been repeatedly held that where the trial and final disposition of an exception will put an end to a case, it should be disposed of before going into a trial on the merits so as to eliminate a protracted and unnecessary trial." *Clostio's Heirs v. Sinclair Refining Co.*, 36 So.2d 283, 286 (La.App. 1 Cir. 1948).

Considering this jurisprudence, we find no error in the trial court's resolution of the exception of res judicata before addressing the exception of prematurity. This assignment of error is without merit.

11

*Motion for New Trial*

Holloway's final assignment of error concerns the trial court's denial of Holloway's motion for new trial. Holloway filed the motion for new trial, asserting that it had obtained new evidence, in the form of the testimony of Ms. Bodin, which bolstered its claims that Mr. Inzarella knew of the embezzlement scheme and also indicated that Mr. Inzarella benefited from the scheme by sending inflated billings to Holloway. According to Holloway, this was the first time that Ms. Bodin had waived her Fifth Amendment privilege and submitted to a deposition.

The Inzarella Firm protested that Ms. Bodin's testimony was not newly discovered evidence and that she had nothing new to offer. The trial court denied the motion, finding that Holloway neither presented evidence that Ms. Bodin was unavailable for the original trial nor established that her testimony was newly discovered evidence. Further, the trial court stated that he did "not believe that Ms. Bonin [sic] can add anything to the testimony that would change this Court's opinion on the issue."

Louisiana Code of Civil Procedure Article 1972 lists the peremptory grounds for a motion for new trial, as relevant herein:

> A new trial shall be granted, upon contradictory motion of any party, in the following cases:
>
> (1) When the verdict or judgment appears clearly contrary to the law and the evidence.
>
> (2) When the party has discovered, since the trial, evidence important to the cause, which he could not, with due diligence, have obtained before or during the trial.

Further, La.Code Civ.P. art. 1973 addresses the discretionary grounds for a motion for new trial, stating that "[a] new trial may be granted in any case if there is good ground therefor, except as otherwise provided by law." In order to meet his or her burden of proof on a motion for new trial on the basis of newly-discovered evidence, the moving

12

party must prove: (1) that the evidence was discovered after the trial; (2) that the new evidence is not cumulative; (3) that the new evidence would tend to change the result of the case; and (4) that the new evidence could not have been discovered with due diligence before the trial was completed. *Bennett v. Porter*, 10-1088 (La.App. 3 Cir. 3/9/11), 58 So.3d 663. In reviewing a trial court's ruling on a motion for new trial, the applicable standard of review is whether the trial court abused its discretion. *Alfred v. Butler*, 09-441 (La.App. 3 Cir. 11/4/09), 28 So.3d 1089.

Holloway contends that Ms. Bodin's statement is the first time that she waived her Fifth Amendment privilege and testified about the embezzlement scheme. However, Holloway did not attempt to establish that Ms. Bodin refused to waive that privilege prior to the original hearing on the exceptions. The record indicates that Ms. Bodin pled guilty to the criminal charges stemming from the alleged embezzlement scheme some time before the hearing on the exceptions. The hearing on the exceptions was held on June 13, 2011, but Holloway did not obtain a sworn statement from Ms. Bodin until July 12, 2011. Further, Holloway submitted no evidence that they had attempted to obtain Ms. Bodin's statement before the hearing on the exceptions or that they had attempted to secure her presence at the hearing by way of subpoena.[3] Accordingly, we find no abuse of discretion in the trial court's determination that Holloway had not satisfied its burden of proof with regard to whether Ms. Bodin's testimony was newly discovered evidence.

Additionally, the trial court stated that Ms. Bodin's testimony would not change the outcome of the ruling on the exceptions. A review of the record indicates that

---

[3] At the hearing on the motion for new trial, Holloway's attorneys stated that they were unsure if Ms. Bodin had been subpoenaed for the initial setting of the hearing on the exceptions. They also stated that the initial setting of the hearing on the exceptions had been continued by agreement for the purpose of taking Ms. Bodin's deposition. However, there is no indication that Holloway attempted to obtain Ms. Bodin's testimony prior to taking her sworn statement on July 12, 2011.

Holloway had already presented evidence in an attempt to establish its allegations of a sexual relationship between Ms. Bodin and Mr. Broussard and the theft. We find no abuse of discretion in the trial court's determination that Ms. Bodin's additional testimony regarding this issue would not change the outcome of the case.

This assignment of error is without merit.

## DECREE

For the foregoing reasons, we affirm the trial court's judgment sustaining the exception of res judicata filed by the defendant, Inzarella, Feldman, and Porciau, A Professional Corporation, and finding that the exception of prematurity was moot. Further, we affirm the trial court's judgment denying the motion for new trial filed by the plaintiffs, Holloway Drilling Equipment, Inc. and Holloway Equipment Rentals, Inc. Costs of this appeal are allocated to Holloway Drilling Equipment, Inc. and Holloway Equipment Rentals, Inc.

**AFFIRMED.**

STATE OF LOUISIANA

COURT OF APPEAL, THIRD CIRCUIT

12-355

HOLLOWAY DRILLING EQUIPMENT, INC. ET AL.

v.

DANIELLE BODIN, ET AL.

**SAUNDERS, J., dissents and assigns written reasons.**

I disagree with the majority opinion. Louisiana Civil Code Article 3076 states, "[a] compromise settles only those differences that the parties clearly intended to settle, including the necessary consequences of what they express." The majority cites the following:

> A compromise instrument is the law between the parties and must be interpreted according to the parties' intent. It follows that the compromise instrument is governed by the same general rules of construction applicable to contracts.

> When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent. [Louisiana Civil Code] Article 2046 emphasizes that the process involves no further interpretation, as opposed to no interpretation at all. Because a compromise extends only to those matters the parties intended to settle, the scope of the transaction cannot be extended by implication. In applying this rule of construction, courts are guided by the general principle that the contract must be considered as a whole and in light of attending events and circumstances.

> The meaning and intent of the parties to a written instrument, including a compromise, is ordinarily determined from the instrument's four corners, and extrinsic evidence is inadmissible either to explain or to contradict the instrument's terms. When a dispute arises as to the scope of a compromise agreement, extrinsic evidence can be considered to determine exactly what differences the parties intended to settle.

*Ortego v. State, Dept. of Transp. & Dev.*, 96-1322, p.7 (La. 2/25/97), 689 So.2d 1358, 1363-64 (citations omitted).

1

The basis for barring a suit due to a compromise or settlement is *res judicata*.

> [U]nder La. R.S. 13:4231, as amended in 1990 effective January 1, 1991, res judicata bars relitigation of a subject matter arising from the same transaction or occurrence of a previous suit. Thus, the chief inquiry is whether the second action asserts a cause of action which arises out of the transaction or occurrence which was the subject matter of the first action.

*Terrebonne Fuel & Lube, Inc. v. Placid Refining Company*, 95-654, 95-671, p. 12 (La.1/16/96), 666 So.2d 624, 632.

Given the above, I cannot find that Holloway intended to compromise its claims against the Inzarella Firm for theft when agreeing to settle a dispute over billing fees for accounting services rendered. Further, I cannot find that the subject of the compromise or settlement arises out of the same transaction or occurrence that necessitated that compromise or settlement.

The proposed majority cites language from, *State ex rel. Sabine River Auth.*, 07-214, 07-215 (La.App. 3 Cir. 10/3/07), 967 So.2d 585, to find that Holloway's claims against the Inzarella Firm are *res judicata*. I authored *State ex re. Sabine River Auth.*, 967 So.2d 585 and feel a distinction must be made.

In *State ex re. Sabine River Auth.*, two general contractors were sued by the State for alleged construction defects related to the construction of the Cypress Bend Conference Center. Thereafter, one of those general contractors filed third party demands against its subcontractors. However, prior to the suit by the State, that general contractor had entered into a compromise with two of its subcontractors wherein all disputes related to the construction of the Cypress Bend Conference Center, known and unknown, were compromised, settled, and released.

Thus, in *State ex re. Sabine River Auth.*, when the general contractor released the two subcontractors from any future claims, the necessary

2

consequences of what it expressed were that further defects in the construction could arise due to the work of those subcontractors and it would be responsible for the results. This result is not absurd, as it is foreseeable by the general contractor that further construction defects may exist. The claims released were causally related to the subsequent claim as they arose out of the same transaction or occurrence, the building of the Cypress Bend Conference Center.

In contrast, here, we have an accounting firm attempting to skirt civil liability from alleged criminal activity due to a compromise over a disputed bill for services rendered. In this situation, there is no foreseeability by Holloway that signing the release would absolve the Inzarella Firm of any damage due to criminal activity. Certainly, it is absurd to believe that Holloway could suffer the consequence of forgiving the theft of its funds because they settled a dispute related to a bill for services rendered, as the two are not causally related, i.e. they do not arise from the same transaction or occurrence.

Finally, I note that the unfortunate effect of this result is to, at least partially, condone criminal activity. Here, Holloway, an unsuspecting business entity, forgives any and all billing disputes, past, present, and future, with its former accounting firm. It is not unreasonable to suggest that this compromise of a civil dispute envisions civil, as opposed to criminal, activity. The majority opinion shields that accounting firm from civil responsibility for criminal activity that it, theoretically, knew transpired in its dealings with Holloway. In my view, this result runs afoul with public policy considerations, the State's clean hands doctrine, and the statutory and jurisprudential precedent cited above. Therefore, I respectfully disagree with the proposed majority opinion.