HOLLOWAY DRILLING EQUIPMENT, INC., ET AL

VERSUS

DANIELLE BODIN, ET AL.

\*\*\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. 2010-1717
HONORABLE DURWOOD CONQUE, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*\*\*

SYLVIA R. COOKS
JUDGE

\*\*\*\*\*\*\*\*\*\*\*\*

Court composed of Sylvia R. Cooks, Jimmie C. Peters, Marc T. Amy, James T. Genovese, and John E. Conery, Judges.

**REVERSED AND REMANDED.**

Amy J., dissents and assigns reasons.
Conery, J., dissents for reasons assigned by Judge Amy.

L. Clayton Burgess
605 West Congress Street
Lafayette, LA  70501
(337) 234-7573
Attorney for Appellant: Holloway Drilling Equip., Inc.


William E. Wright, Jr.
Charlotte C. Meade
Deutsch, Kerrigan & Stiles, LLP
755 Magazine Street
New Orleans, LA  70130-3672
(504) 581-5141
Attorneys for Appellee: Gregory Inzerella

**Cooks, J.**

## FACTS AND PROCEDURAL HISTORY

Danielle Bodin (Bodin) was employed as a bookkeeper and runner by Holloway Drilling Equipment, Inc. and Holloway Equipment Rentals, Inc. (collectively "Holloway") from 2002 to 2010. Holloway employed the CPA firm, Inzarella, Feldman and Pourciau, APC (Inzarella Firm) as its accounting firm during the years of Bodin's employment until Holloway terminated the Inzarella Firm's employment in 2008. After ending its relationship with the Inzarella Firm, Holloway discovered a large discrepancy in the final bill from the Inzarella Firm. As a result, a dispute arose between Holloway and the Inzarella Firm regarding the final fee charged by the Inzarella Firm for its accounting services to Holloway. On March 26, 2009, Holloway and the Inzarella Firm signed a Receipt and Release Agreement resolving the billing dispute. The parties agreed that Holloway would pay, and the Inzarella Firm would accept, the sum of $12,000.00 as a full and complete payment of any monies owed by Holloway to the Inzarella Firm for its services. The Inzarella Firm claimed Holloway owed it $23,737.99 for its services. The Agreement was notarized by Bodin and was signed by Gregory J. Inzarella as President of the Inzarella Firm, and Rickey A. Holloway, as President of Holloway Drilling.

On March 11, 2010, Holloway filed suit against Bodin, her husband, Kyle Bodin (Kyle), and their business enterprise, Butterfly Bodies, LLC. Holloway alleged that Bodin, with the knowledge and assistance of her husband Kyle, had embezzled substantial sums of money from Holloway while in its employ. On February 7, 2011, Holloway amended its petition to add Iberia Bank Corporation as a defendant. On February 28, 2011, Holloway again filed a Supplemental and

Amended Petition adding as defendants "Eric Broussard, Individually, Inzarella, Feldman and Purciau, A Professional Corporation [,] and John W. Wright, Ltd., A certified Public Accounting Corporation." Holloway alleged that Broussard, acting "individually and/or in the course and scope of his employment with Inzarella, Feldman and Purciau," from "late 2002 through December 2008," and "individually and/or in the course and scope of his employment with Wright from January 2009 through March, 2010," as accountant for Holloway, had cooperated with and helped Bodin and her husband steal substantial sums of money from Holloway.

On April 19, 2011, the Inzarella Firm filed an exception of Res Judicata which was granted by the trial court. The trial court's judgment granting the Inzarella Firm's exception of res judicata was affirmed on appeal before this court in *Holloway Drilling Equipment, Inc. v. Bodin*, 12-355 (La.App. 3 Cir. 11/7/12) 107 So.3d 699, *writ not considered,* 13-251 (La.3/8/13) 109 So.3d 353.

On March 7, 2012, while the Inzarella Firm's appeal was pending in this court, Holloway filed its Fourth Supplemental and Amending Petition adding Gregory Inzarella, individually, as a defendant in the matter alleging that he "as the owner and managing partner of the Inzarella Firm" acted "negligently and/or intentionally in assisting [Bodin] and/or [Eric] Broussard in" embezzling money from Holloway. On April 2, 2012, Gregory Inzarella, individually, filed a Peremptory Exception of Res Judicata asserting that the Receipt and Release Agreement of March 2009, bars Holloway's action against him, individually, essentially for the same reasons this court found it barred recovery against the Inzarella Firm. Holloway appeals, asserting the trial court erred in sustaining

2

Gregory Inzarella's exception of res judicata and dismissing the action against him with prejudice.

## LAW AND ANALYSIS

We have reviewed the trial court's ruling on the exception of res judicata under the manifest error standard of review. *State ex rel. Sabine River Auth*. V. Meyers & Assocs., Inc., 07-214, 07-215 (La.App. 3 Cir. 10/3/07), 967 So.2d 585. After a thorough review of the law and jurisprudence, and a careful consideration of our learned colleague Judge John Saunders' dissent in *Holloway Drilling Equipment*, 107 So.3d at 710-12, we conclude that we cannot agree with the majority's finding and its reasoning in that opinion.

The language in the Receipt and Release Agreement made between Holloway and the Inzarella Firm in March 2009, which resolved the dispute over the final bill for the Inzarella Firms' accounting services provided to Holloway, appears in the record as follows (emphasis added):

> WHEREAS, IF&P has performed professional accounting services for CLIENT [Holloway] and for which IF&P has charged CLIENT the sum of $23,737.99 for said services; and
>
> WHEREAS, *CLIENT has disputed the amount of the said charges*; IF&P does hereby accept the sum of $12,000.00, hereby paid and gives full acquitance for the same and for any further compensation arising out of its performance of professional accounting services heretofore completed.
>
> As consideration thereof, the parties herein specifically release, acquit and forever discharge each other party, their agents, employee and assigns, from any and all actions, causes of action, or claims of every character, nature and kind, whatsoever, known or unknown, past, present and future and all related expenses in connection with or arising from the relationship previously existing between the parties.
>
> *The parties enter into this compromise, receipt and release in order to put* **this matter** *to a full and final end* and that the terms of the Receipt and Release are contractual and not a mere recital, and the

parties do hereby acknowledge that each fully understands the contents and ramifications of same.

The Louisiana Civil Code in Title XVII, entitled "Compromise," defines and governs agreements such as the Receipt and Release Agreement signed by Holloway and the Inzarella Firm in 2009. Louisiana Civil Code Article 3076 (emphasis added) provides, "A compromise settles *only those differences that the parties clearly intended to settle*, including the necessary consequences of what they express." The revision comment(b) – 2007, which follows the article, states "Under this article, a compromise must clearly express the rights that the parties intended to settle." By *its express terms*, this compromise agreement was for the sole purpose of amicably resolving a disputed bill for accounting services rendered by the Inzarella Firm to Holloway. The agreement clearly sets forth the singular basis for this compromise agreement, i.e., the disputed amount charged by the Inzarella Firm for its accounting services to Holloway. The agreement specifically refers to this singular billing dispute as "*this* matter" in describing the reason the parties were entering into this compromise agreement, i.e., to resolve a specifically identified dispute over the final amount owed to the Inzarella Firm for its services after Holloway discharged it. The broad language in the compromise agreement cannot rightly be employed, as our colleagues in the majority in *Holloway Drilling Equipment*, 107 So.3d 699-710, did, to include Holloway's claims arising out of a criminal conspiracy to embezzle nearly two million dollars from Holloway. That matter is an entirely separate and distinct "matter" which is completely outside, separate and distinct from, the "matter" clearly identified within the four corners of the compromise Agreement at issue.

In *Reyes-Ramirez v. Progessive Security Insurance Co.*, 08-374, p. 3-4 (La.App. 3 Cir. 11/5/08), 996 So.2d 1213, 1216 (alterations in original) (emphasis added), *writ denied*, 08-2877 (La. 2/6/09), 999 So.2d 784, this court discussed transaction and compromise and the manner in which a court determines the scope or extent of a compromise agreement:

> A transaction or compromise, which is a contract which settles a dispute, can serve as the basis for an exception of res judicata. La. Civ. Code art. 3071; *Brown v. Drillers, Inc.*, 93-1019 (La.1/14/94), 630 So.2d 741. "*A compromise settles **only those differences that the parties clearly intended to settle***." La. Civ. Code art. 3076. Being a contract, a compromise is interpreted by determining the common intent of the parties. La. Civ. Code art. 2045; *Brown,* 630 So.2d 741. "When the words of a contract are clear and explicit and ***lead to no absurd consequences,*** no further interpretation may be made in search of the parties' intent." La.Civ.Code art. 2046.
>
> In *Brown*, 630 So.2d at 748 (citation omitted), the supreme court explained how a court determines the extent of a compromise agreement pursuant to La.Civ.Code art. 3073:
>
>> **[A] compromise agreement extends only to those matters that the parties expressly intended to settle and . . . the scope of the transaction cannot be extended by implication**. More precisely, LSA-C.C. Art. 3073 set[s] forth the following four factors to be considered in determining the scope of a compromise instrument:
>>
>>> [1] Transactions regulate only the differences which appear clearly to be comprehended in them by the intention of the parties,
>>>
>>> [2] whether it be explained in a general or particular manner,

> [3] unless it be the necessary consequence of what is expressed; and
>
> **[4] they do not extend to differences which the parties never intended to include in them.**

The supreme court then observed that "the intent which the words of the compromise instrument express in light of the surrounding circumstances at the time of execution of the agreement is controlling." *Id.*

It would indeed lead to an absurd consequence if the Receipt and Release agreement signed in 2009, which describes the matter being resolved as a billing dispute which arose when Holloway terminated the services of the Inzarella Firm in 2008, is interpreted as evidencing Holloway's intent to release the Inzarella Firm, "its employee, agents and assigns," from all liability arising as a result of Gregory Inzarella's alleged participation in a scheme to steal nearly two million dollars from it. The wording of the Receipt and Release at issue indicates only that the parties intended to resolve the disputed bill and any cause of action or claim Holloway might have, known or unknown, *regarding the disputed final bill*. Nothing in the wording of the compromise agreement evidences any intention by Holloway to accept the Inzarella Firm's agreement to settle its claim against Holloway in exchange for Holloway's claim against Gregory Inzarella for participating in the criminal theft of nearly two million dollars from Holloway. That the two matters are distinctly different is too obvious for further comment.

Judge Saunders understood the application of *Brown's* directions and the interplay between our Civil Code's provisions regarding compromise agreements specifically, and contracts in general, along with the basis for a finding of res judicata. Judge Saunders explained as follows (emphasis added):

A compromise agreement is the law between the parties and must be interpreted according to the parties' intent. It follows that the compromise instrument is governed by the same general rules of construction applicable to contracts.

. . . .

When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent. [Louisiana Civil Code] Article 2046 emphasizes that the process *involves no further interpretation, as opposed to no interpretation at all*. Because a compromise extends only to those matters the parties intended to settle, the scope of the transaction cannot be extended by implication. In applying this rule of construction, courts are guided by the general principle that the contract must be considered as a whole and in light of attending events and circumstances.

. . . .

The basis for barring a suit due to a compromise or settlement is *res judicata.*

[U]nder La. R.S. 13:4231, as amended in 1990 effective January 1, 1991, res judicata bars relitigation of a subject matter *arising from the same transaction or occurrence of a previous suit.* Thus, the chief inquiry is whether the second action asserts a cause of action which arises out of the transaction or occurrence which was the subject matter of the first action.

*Terrebonne Fuel & Lube, Inc. v. Placid Refining Company,* 95-654, 95-671, p. 12 (La.1/16/96), 666 So.2d 624, 632. *Holloway Drilling Equipment*, 107 So.3d at 710-11 (alterations in original) (*quoting Ortego v. State Dept. of Transp. & Dev.,* 06-1322. P. 7 (La. 2/25/97), 689 So.2d 1358, 1363-64 (citations omitted).

We, like Judge Saunders, recognize that Holloway in no way intended to settle its claims against Gregory Inzarella for his alleged participation in the criminal theft of its money when it agreed that it only owed the Inzarella Firm $12,000.00 for its services rather than the $23,737.99 originally claimed. Clearly the subject of the compromise settlement of 2009, and the subject of Holloway's lawsuit against Gregory Inzarella and others does not arise out of the same transaction or occurrence. Likewise, we agree with the eloquent expression by

Judge Saunders that to allow the compromise agreement signed in 2009, to constitute res judicata barring Holloway's claims raised in its suit commencing in 2010, is to "condone criminal activity" and "runs afoul [of] public policy considerations, the State's clean hands doctrine, and the statutory and jurisprudential precedent [.]" We note the fact that the very Receipt and Release Agreement which Gregory Inzarella asserts as a bar to Holloways' claims against him was signed by him, in his capacity as President of the Inzarella Firm, even while allegedly knowing he had participated in and covered up the theft of large sums of money from Holloway. We note too, the unsettling irony, and later admission by Bodin that she notarized the very Receipt and Release Agreement at issue knowing also at the time that she and her alleged accomplices had stolen large sums of money from Holloway by using their various positions of trust and access. For the reasons stated, we reverse the judgment of the trial court and remand the matter for further proceedings.

**REVERSED AND REMANDED**.

NUMBER 14-248

COURT OF APPEAL, THIRD CIRCUIT

STATE OF LOUISIANA

HOLLOWAY DRILLING EQUIPMENT, INC., ET AL.

VERSUS

DANIELLE BODIN, ET AL.

AMY, J., dissenting.

I respectfully dissent from the majority opinion as I would affirm the trial court's ruling on the exception of res judicata in light of *Holloway Drilling Equipment, Inc. v. Bodin*, 12-355 (La.App. 3 Cir. 11/7/12), 107 So.3d 699, *writ not considered*, 13-251 (La. 3/8/13), 109 So.3d 353. Given the broad language of the receipt and release agreement, as discussed in that underlying appeal, I find no distinction between the earlier proceeding and this matter brought against the defendant in his individual capacity.