# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 14-668

**HOLLOWAY DRILLING EQUIPMENT, ET AL.**

**VERSUS**

**ERIC BROUSSARD, ET AL.**

**********

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. C-2011-2460
HONORABLE PATRICK LOUIS MICHOT, DISTRICT JUDGE

**********

## JOHN D. SAUNDERS
## JUDGE

**********

Court composed of John D. Saunders, Jimmie C. Peters, and James T. Genovese, Judges.

**REVERSED IN PART; AFFIRMEED IN PART; AND REMANDED.**

**William H. Parker, III**
**Allen & Gooch**
**P. O. Box 81129**
**Lafayette, LA 70598-1129**
**(337) 291-1000**
**COUNSEL FOR DEFENDANT/APPELLEE:**
    John W. Wright, Ltd.

**Michael A. Patterson**
**Latoya D. Jordan**
**Attorney at Law**
**4041 Essen Lane, Suite 500**
**Baton Rouge, LA 70809**
**(225) 922-5110**
**COUNSEL FOR DEFENDANT/APPELLEE:**
**Eric Broussard**

**L. Clayton Burgess, APLC**
**Angela B. Odinet**
**Attorney at Law**
**605 W. Congress St.**
**Lafayette, LA 70501**
**(337) 234-7573**
**COUNSEL FOR PLAINTIFFS/APPELLANTS:**
**Holloway Drilling Equipment, Inc.**
**Holloway Rentals, Inc.**

**SAUNDERS, Judge.**

This is an appeal from the judgment of the trial court sustaining an exception of res judicata and denying an exception of peremption. For the following reasons, we reverse the judgment sustaining the exception of res judicata and remand for further proceedings, but affirm the trial court's judgment denying the exception of peremption.

## FACTS AND PROCEDURAL HISTORY

Danielle Bodin[1] (hereafter "Bodin") was employed as a bookkeeper and runner by Holloway Drilling Equipment, Inc. and Holloway Equipment Rentals, Inc. (hereafter collectively referred to as "Holloway") from 2002 to 2010. Holloway employed Inzerella, Feldman and Pourciau, APC (hereafter "the Inzerella Firm[2]") as its accounting firm until 2008. After terminating the Inzerella Firm, Holloway discovered a large discrepancy in the final bill from the Inzerella Firm. As a result, a dispute arose between Holloway and the Inzerella Firm regarding the final fee charged by the Inzerella Firm for its accounting services to Holloway. The Inzerella Firm claimed Holloway owed it $23,737.99 for its services.

On March 26, 2009, Holloway and the Inzerella Firm signed a Receipt and Release Agreement resolving the billing dispute. The parties agreed that Holloway would pay, and the Inzerella Firm would accept, the sum of $12,000.00 as a full and complete payment of any monies owed by Holloway to the Inzerella Firm for its services. The Agreement was notarized by Bodin and was signed by Gregory J. Inzerella, as President of the Inzerella Firm, and Rickey A. Holloway, as President of Holloway Drilling.

---

[1] Throughout the various pleadings and appeals, Bodin is referred to as Danielle Bodin and/or Danielle Guidroz and/or Danielle Pellerin Guidroz.

[2] Throughout the various pleadings and appeals, Inzerella is sometimes spelled as Inzarella.

On March 11, 2010, Holloway filed suit against Bodin, her husband, Kyle Bodin, and their business enterprise, Butterfly Bodies, LLC. Holloway alleged that Bodin, with the knowledge and assistance of her husband, Kyle Bodin, had embezzled substantial sums of money from Holloway while in its employ.

On February 28, 2011, Holloway filed a second Supplemental and Amended Petition adding as defendants "Eric Broussard, Individually, Inzarella, Feldman and Purciau, A Professional Corporation [,] and John W. Wright, Ltd., A certified Public Accounting Corporation." Holloway alleged that Broussard, acting "individually and/or in the course and scope of his employment with Inzarella, Feldman and Purciau," from "late 2002 through December 2008," and "individually and/or in the course and scope of his employment with Wright from January 2009 through March, 2010," as accountant for Holloway, had cooperated with and helped Bodin and her husband steal substantial sums of money from Holloway.

On March 31, 2011, Holloway filed a complaint with the Society of Louisiana Certified Public Accountants against John W. Wright, Ltd. (hereafter "Wright"), the Inzerella Firm, and Eric Broussard (hereafter "Broussard") pursuant to La.R.S. 37:101 *et. seq.*[3]

The Inzerella Firm filed an exception of res judicata based on the Receipt and Release Agreement. The trial court granted the exception, which was affirmed on appeal in *Holloway Drilling Equipment, Inc. v. Bodin*, 12–355 (La.App. 3 Cir. 11/7/12), 107 So.3d 699, *writ not considered*, 13–251 (La. 3/8/13), 109 So.3d 353 (*Holloway Drilling I*).

---

[3] Louisiana Revised Statutes 37:101 *et. seq.* provide for the review of claims against certified public accountants and firms by a public accountant review panel.

On May 2, 2011, Wright filed a petition to establish a district court proceeding pursuant to La.R.S. 37:108. On July 1, 2011, following a joint motion to dismiss, an order of voluntary dismissal was signed dismissing Broussard without prejudice.

On March 7, 2012, Holloway filed its Fourth Supplemental and Amending Petition adding Gregory Inzerella, individually, as a defendant in the matter alleging that he "as the owner and managing partner of the Inzarella Firm" acted "negligently and/or intentionally in assisting [Bodin] and/or [Eric] Broussard in" embezzling money from Holloway.

On April 2, 2012, Gregory Inzerella, individually, filed an exception of res judicata, asserting that the Receipt and Release Agreement of March 2009, barred Holloway's action against him, individually, essentially for the same reasons this court found it barred recovery against the Inzerella Firm. Holloway appealed and a panel of this court reversed the trial court's judgment sustaining the exception and remanded the matter for further proceedings in *Holloway Drilling Equipment, Inc. v. Bodin*, 14-248 (La.App. 3 Cir. 11/26/14), --- So.3d --- (*Holloway Drilling II*).

On January 31, 2014, Broussard filed Exceptions of Res Judicata and Peremption. The trial court sustained the exception of res judicata, but denied the exception of peremption. It is from this lengthy and complicated set of facts that the instant appeal arises.

## RES JUDICATA

In his exception of res judicata, Broussard asserts that "all of Holloway's claims against Broussard that relate to allegations that occurred between 2002 and 2008 have been compromised and settled." The trial court sustained Broussard's exception of res judicata, citing *Holloway Drilling Equipment, Inc.*, 109 So.3d 699, and found "that the parties entered [into] a settlement agreement releasing all

3

claims, including all future claims, against Inzerella and its employees, including Broussard[.]" Holloway contends that the trial court erred in sustaining the exception. We agree.

A ruling sustaining an exception of res judicata is reviewed for manifest error when the exception is raised prior to submission of the case for decision and evidence is submitted by both parties. *Jones ex rel. Jones v. GEO Grp., Inc.*, 08-1276 (La.App. 3 Cir. 4/1/09), 6 So.3d 1021 (citing *State ex rel. Sabine River Auth. v. Meyer & Assocs. Inc.*, 07–214, 07–215 (La.App. 3 Cir. 10/3/07), 967 So.2d 585).

> The Peremptory Exception of Res Judicata is ordinarily based upon a final judgment between the parties, however, when parties put an end to a lawsuit by adjusting their differences and entering into a written transaction or compromise; that written instrument has the effect of a thing adjudged between the parties. *Bowden v. State Farm Mut. Auto. Ins. Co.*, 150 So.2d 655 (La.App. 3rd Cir.1963).

*State ex rel. Sabine River Auth.*, 967 So.2d at 589.

> [U]nder La.R.S. 13:4231, as amended in 1990 effective January 1, 1991,
>
> > a second action would be barred because it arises out of the occurrence which was the subject matter of the prior litigation. The central inquiry is not whether the second action is based on the same cause or cause of action (a concept which is difficult to define) but whether the second action asserts a cause of action which arises out of the transaction or occurrence which was the subject matter of the first action.

*Terrebonne Fuel & Lube, Inc. v. Placid Refining Co.*, 95-654, 95-671, p. 12 (La. 1/16/96), 666 So.2d 624, 632.

> A compromise instrument is the law between the parties and must be interpreted according to the parties' intent. It follows that the compromise instrument is governed by the same general rules of construction applicable to contracts.
>
> When the words of a contract are clear and explicit and lead to no absurd consequences, no further

4

interpretation may be made in search of the parties' intent. [Louisiana Civil Code] Article 2046 emphasizes that the process involves no *further* interpretation, as opposed to no interpretation at all. Because a compromise extends only to those matters the parties intended to settle, the scope of the transaction cannot be extended by implication. In applying this rule of construction, courts are guided by the general principle "that the contract must be considered as a whole and in light of attending events and circumstances."

The meaning and intent of the parties to a written instrument, including a compromise, is ordinarily determined from the instrument's four corners, and extrinsic evidence is inadmissible either to explain or to contradict the instrument's terms. When a dispute arises as to the scope of a compromise agreement, extrinsic evidence can be considered to determine exactly what differences the parties intended to settle.

*Ortego v. State, Dep't. of Transp. & Dev.*, 96-1322, p. 7 (La. 2/25/97), 689 So.2d 1358, 1363-64 (citations omitted).

Louisiana Civil Code Article 3076 states, "A compromise settles only those differences that the parties clearly intended to settle, including the necessary consequences of what they express." "[A] compromise must clearly express the rights that the parties intended to settle." *Holloway Drilling II*, __ So.3d at __ (quoting La.Civ. Code art. 3076, cmt (b)).

We disagree with the majority opinion in *Holloway Drilling I*, 107 So.3d 699. The compromise at issue was reached to end a dispute over the amount the Inzerella Firm charged Holloway for accounting services rendered. It would be absurd to conclude that Holloway intended to compromise its claims against Broussard for its losses caused by Broussard's alleged illegal activity when it agreed to settle a dispute over fees billed to it. Further, we do not find that the subject of the compromise or settlement, a fee dispute, is causally related to the allegations of theft of Holloway's funds. We conclude that the compromise

5

agreement settles an issue that does not arise out of the same transaction or occurrence as the claims in the instant matter.

Judge Cooks keenly observed in *Holloway Drilling II*, __ So.3d at __:

> By *its express terms*, this compromise agreement was for the sole purpose of amicably resolving a disputed bill for accounting services rendered by the Inzarella Firm to Holloway. The agreement clearly sets forth the singular basis for this compromise agreement, i.e., the disputed amount charged by the Inzarella Firm for its accounting services to Holloway. The agreement specifically refers to this singular billing dispute as *"this* matter" in describing the reason the parties were entering into this compromise agreement, i.e., to resolve a specifically identified dispute over the final amount owed to the Inzarella Firm for its services after Holloway discharged it. The broad language in the compromise agreement cannot rightly be employed, as our colleagues in the majority in *Holloway Drilling Equipment*, 107 So.3d 699–710, did, to include Holloway's claims arising out of a criminal conspiracy to embezzle nearly two million dollars from Holloway. That matter is an entirely separate and distinct "matter" which is completely outside, separate and distinct from, the "matter" clearly identified within the four corners of the compromise Agreement at issue.

Holloway could not have foreseen that the forgiveness of any and all civil claims related to a single billing dispute with the Inzerella Firm would absolve Broussard of all civil liability arising from his alleged criminal activity. To find otherwise would "condone criminal activity" and such a result would "run[] afoul with public policy considerations, the State's clean hands doctrine, and the statutory and jurisprudential precedent[.]" *Holloway Drilling I*, 107 So.3d at 712 (Saunders, J., dissenting).

For the foregoing reasons, we reverse the judgment of the trial court sustaining the exception of res judicata and remand the matter for further proceedings.

**PEREMPTION**

Broussard filed an exception of peremption, asserting Holloway's claims against him were perempted because it did not file its request for review with the Society of Louisiana Certified Public Accountants within one year of learning of the implications against him. The trial court denied Broussard's exception of peremption, finding "the evidence presented by the parties concerning the date of Holloway's knowledge of Broussard's alleged involvement in the embezzlement scheme was conflicting and inconsistent" and "that Broussard did not prove that Holloway had knowledge on March 12, 2010, of Broussard's alleged involvement in the embezzlement scheme." In his answer to the appeal, Broussard asserts the trial court erred in denying his exception. We disagree.

> An exception of prescription is a peremptory exception that is among those listed in La.Code Civ.P. art. 927. The list is nonexclusive. A peremptory exception may therefore rightfully include an exception of peremption, the effect of which would be to terminate the litigation.
>
> A peremptory exception may be raised at any stage of the proceeding in the trial court prior to the submission of the case for a decision. Where, as here, a peremptory exception is pled prior to trial, the exception is tried and disposed of in advance of or on the trial of the case. When evidence is introduced and evaluated at the trial of the exception, an appellate court must evaluate subject to the traditional rules governing appellate review of facts. Therefore, "the trial court's factual determinations regarding preemption [sic]/prescription should not be reversed in the absence of manifest error, as the issue to be decided by the appellate court is not whether the trier of fact was right or wrong, but rather whether the fact finder's conclusion was a reasonable one."

*Dauterive Contractors, Inc. v. Landry & Watkins*, 01-1112, pp. 7-8 (La.App. 3 Cir. 3/13/02), 811 So.2d 1242, 1248-49 (alteration in original) (citations omitted). Where there are two permissible views of the evidence, there cannot be manifest error. *LeBlanc v. Calcasieu Parish Sch. Bd.*, 02-728 (La.App. 3 Cir. 12/30/02),

834 So.2d 1258 (citing *Seal v. Gaylord Container Corp.*, 97-688 (La. 12/2/97), 704 So.2d 1161; *Stobart v. State through Dep't of Transp. & Dev.*, 617 So.2d 880 (La.1993)).

Although preemption and prescription differ in some respects, peremption is a species of prescription, *Dauterive Contractors, Inc.*, 811 So.2d at 1251, which begins to run upon obtaining actual or constructive knowledge of facts which should have alerted a reasonable person that he may have been the victim of malpractice. *Campo v. Correa*, 01-2707 (La. 6/21/02), 828 So.2d 502. Peremptive statutes are strictly construed in favor of maintaining the claims. *Rando v. Anco Insulations, Inc.*, 08-1163, 08-1169 (La. 5/22/09), 16 So.3d 1065. Generally, the exceptor bears the burden of proof. *Id.*

Louisiana Revised Statutes 9:5604 (emphasis added), which establishes the time limit to file an action concerning professional accounting liability, provides, in pertinent part:

> A. No action for damages against any accountant duly licensed under the laws of this state, or any firm as defined in R.S. 37:71, whether based upon tort, or breach of contract, or otherwise, arising out of an engagement to provide professional accounting service shall be brought unless filed in a court of competent jurisdiction and proper venue within one year from the date of the alleged act, omission, or neglect, or *within one year from the date that the alleged act, omission, or neglect is discovered or should have been discovered*; however, *even as to actions filed within one year from the date of such discovery, in all events such actions shall be filed at the latest within three years from the date of the alleged act, omission, or neglect.*
>
> . . . .
>
> E. The *peremptive period provided in Subsection A of this Section shall not apply to cases of fraud*, as defined in Civil Code Article 1953.

In interpreting subsection E of the legal malpractice statute, La.R.S. 9:5605, which is worded identically to La.R.S. 9:5604(E), we concluded that "if fraud is proven, the three-year peremptive period will be inapplicable; the claim can be brought at any time after the act of malpractice, *subject still, however,* to the one-year peremptive period, to which the fraud exception is inapplicable." *Dauterive Contractors, Inc.*, 811 So.2d at 1260-61. Accordingly, we conclude that, pursuant to La.R.S. 9:5604, no action against an accountant may be brought more than one year after the alleged act giving rise to the suit is discovered or should have been discovered. The filing of a request for review with the public accountant review panel within one year of the alleged acts giving rise to the complaint is an "exercise of [a claimant's] right to seek judicial cognizance of his claim" and is sufficient to avoid peremption. *Bernard, Cassisa, Elliott, & Davis v. Estate of Laporte*, 12-758, p. 6 (La.App. 5 Cir. 3/27/13), 113 So.3d 397, 401. Filing suit in district court prematurely will not be sufficient to avoid the peremptive periods established in La.R.S. 9:5604. *Id.*

On February 28, 2011, Holloway again filed a Supplemental and Amended Petition adding Broussard as a defendant. On March 31, 2011, Holloway filed a complaint with the Society of Louisiana Certified Public Accountants pursuant to La.R.S. 37:101 *et. seq.* Broussard asserts that Damian Domingue's testimony establishes that Holloway, through Mr. Domingue, had knowledge of the allegations Bodin made against Broussard on March 12, 2010; thus, the March 31, 2011 filing with the Society of Louisiana Certified Public Accountants was too late. Mr. Domingue testified:

> Q.    Prior to Ms. Bodin's statement and deposition, did
>        she ever mention before that that Mr. Broussard
>        helped her conceal her theft?

A. I didn't talk to Mrs. Bodin between when she – when we found out and her deposition. I haven't -- I never spoke to her.

Q. Did you ever hear that allegation before that? You may -- you may not have spoken to her, but at some point, did you hear: Oh, Mr. Broussard may have had something to do with this?

A. Yes.

Q. And who did you hear that from?

A. I think she said that during her questioning at the Broussard PD.

Q. Okay. Do you remember when that was?

A. March 12th.

Q. That same week. You're good on those dates.

A. Oh, trust me, I'll remember that week the rest of my life.

Q. At Broussard PD. And who was there during this questioning with the Broussard PD?

A. Detective Credeur and Chief Decou.

Q. And was -- was she the only person being interrogated, or was this kind of a meeting where everybody was discussing?

A. No, they had arrested her, and she was. . . .

In brief, Broussard directs this court to his own testimony, in which he asserts that Mr. Domingue informed him that he should no longer perform accounting work for Holloway approximately ten days after Bodin's interview with the Broussard Police Department.

While Mr. Domingue's testimony certainly establishes that Mr. Domingue was present at the Broussard Police Department when Bodin was being questioned by Detective Credeur and Chief Decou and that the interview occurred on March 12, 2010, we find that the trial court did not err in concluding "that Broussard did

not prove that Holloway had knowledge on March 12, 2010, of Broussard's alleged involvement in the embezzlement scheme." Mr. Domingue's testimony that he "think[s]" he "may have" heard Bodin implicate Broussard during the interview with Broussard Police Department is equivocal, at best, and does not make it more probable than not that Holloway had knowledge of Bodin's implication of Broussard on March 12, 2010.

Further, although the fact that Broussard was discharged from performing accounting work for Holloway may indicate that Holloway knew Ms. Bodin had implicated Broussard, it may just as easily indicate that Broussard was fired because he had overlooked the fact that such a substantial sum of money was missing. There are numerous reasons why Holloway may have discharged Broussard. Additionally, Broussard was unsure of the date of his discharge. We find that Broussard's discharge on some unknown date for some unknown reason does not support his claim that Holloway knew of the allegations against him on March 12, 2010.

For the foregoing reasons, we find that the trial court's conclusion that Broussard did not meet his burden of proof is supported by the record and, thus, is not manifestly erroneous or clearly wrong.

## CONCLUSION

For the foregoing reasons we reverse the judgment of the trial court sustaining Broussard's exception of res judicata and remand for further proceedings, but affirm the judgment overruling the exception of peremption. All costs of this appeal are assessed to Appellant.

**REVERSED IN PART; AFFIRMED IN PART; AND REMANDED.**