No. 531

First Circuit

FERRY v. HOLMES & BARNES, LTD., ET AL.

(December 3, 1929. Opinion and Decree.)

Breazeale and Sachse, of Baton Rouge, attorneys for plaintiff, appellant.

Taylor, Porter, Loret & Brooks, of Baton Rouge, attorneys for defendants, appellees.

Daspit, Huckabay & Blanche, of Baton Rouge, attorneys for intervener, appellant.

MOUTON, J. Plaintiff, at the time a salesman for Waterman Company, was injured while the occupant of a car that Worthy B. Gallent was driving in the interest of Holmes & Barnes, his co-defendant. This suit is brought against these two defendants by plaintiff in damages for the injuries he alleges he suffered as the result of the accident.

His claim was rejected. He appeals.

The car, a Chevrolet, was the property of Gallent, who had bought it from the McInnes Chevrolet Company of Baton Rouge, January 5, 1928.

Gallent testified that in February, while driving his car near Baton Rouge with his family at about 15 miles an hour, the brakes became jammed, and by driving in low gear he succeeded in loosening the brakes. A few days thereafter the locking of the brakes occurred again. He then drove the car to the McInnes Chevrolet Company, where Paxton, a mechanic, fixed it. The car was returned to him the same afternoon in good shape. The next morning while going to his office the brakes hung up again. It was repaired at the same establishment and returned to him as being in perfect mechanical condition. Next morning on his way to Hammond the brakes caught up again, but he managed to unlock them by throwing the car in lower gear. Two or three days thereafter while traveling around Baton Rouge the same trouble occurred. This happened on March 3, 1928. The car was taken by him to the McInnes garage, where it was again repaired and returned to him with the assurance that the trouble had been eliminated. This was on a Saturday; the next day, Sunday, he drove the car approximately 100 miles without experiencing the least trouble. The day after, on Monday, he took Ferry, the plaintiff, along with him in the car, drove it at the usual rate of speed, and without any trouble whatsoever. On Tuesday, he left in company with plaintiff, drove to Corben and Walker, and came back to Denham Spring. On this trip Gallent was selling wares for Holmes & Barnes, and plaintiff, the other salesman, was doing missionary work by introducing goods for the company he was representing. It does not appear that Gallent is a mechanic or has any knowledge concerning the mechanism of automobiles. No doubt, he had entire confidence in the skill of the workmen who had repaired his car, and felt certain, before leaving with plaintiff on their trip from Baton Rouge, that the cause of the trouble with his brakes had been entirely eliminated. On their way home to Baton Rouge, when they reached a place known as Lively Bottoms, the accident occurred from which resulted the injuries of which plaintiff complains.

Gallent says it had just begun to sprinkle when he got to Lively Bottoms. He said plaintiff asked him about that time if the roads "got very slick" when it rained. He answered no, says he wondered

if plaintiff thought he was going too fast to suit him, and looked at his speedometer which registered under 40—he would say 38 or 39 miles an hour. Gallent is certain he was not going faster than that. Gallent says it had just begun to sprinkle, and that the road was not "slick." Plaintiff testifies to the contrary in this respect. In reference to the speed at which defendant was traveling at that time, plaintiff in his petition estimates it at about 40 miles an hour, while in his testimony he fixes the speed, first, between 45 and 50 miles, and then says about 50 miles of which he says he is absolutely positive as he had looked at the speedometer. It would seem from these fluctuating estimates that plaintiff was inclined to a little exaggeration. However that may be, we do not think, taking the facts of the case in connection with the contradictory testimony of these witnesses on this subject, that the turning over of the car was caused by excessive speed or to the slippery condition of the roadway.

Gallent says he saw an auto about 250 yards ahead of him and a man flagging; that there was also another car parked on the side of the road with a stop light in the rear. He says he had all the space needed to stop his car, but that when he saw this stop light he placed his foot on the brakes "just to check the momentum of his car," not because he thought he would run into the auto. He says he then released his foot from the brakes, the rear end of his car whipped around, and the front "held." From his past experience with the car, he says, he then realized what the trouble was, he tried to hold his car sideways to keep the rear from going into the ditch, and then slammed the brakes in trying to break them loose, but all in vain. By that time the rear wheels had gotten in the ditch on the side of the roadway and the car turned over. He says the brakes being locked caused the running board to get on the gravel and the back wheels of the car into the ditch. He is positive that the brakes were locked and that this was the cause of the accident. He says when the car turned over he had slowed down to about 32 or 33 miles an hour.

The two mechanics who testified in the case say that brakes could lock on a car going at 16 or 18 miles an hour, but not at 25 or 32. Paxton, one of the mechanics, would not say the locking of the brakes would be impossible at that rate of speed. The fact is that he said if a car was going 35 or 40 miles an hour, the putting on of the brakes would not cause it to turn over, but if one of "the brakes happened to lock on you going at that rate of speed it would throw you around," although he says in reference to that statement that he never heard of one locking at that speed, and had never heard of it.

The mechanics admit that the brakes on that car had been repaired a couple of times. No doubt, they make so many repairs on automobiles, that they cannot remember all the instances in which they may be called to do work of that character. Gallent testified, however, of the frequent repair of these brakes that had so frequently locked while he was driving his car. Paxton, the mechanic, said at the speed Gallent was traveling if the brakes locked the car would turn around.

From the recital of the occurrence given by Gallent, the driver of the car, that is what happened and caused the car to turn over. It was a case of emergency in which Gallent did all that he could under the circumstances to keep his car from turning over but without avail.

In Jacobs vs. Jacobs, 141 La. 272, 74 So.

992, L. R. A. 1917F, 253, the court said the driver's duty and responsibility to his guest in an automobile is merely to be careful and avoid committing any act of negligence or imprudence that might add to or increase the ordinary danger. It is demanded of him that he avoid the ordinary negligence or imprudence referred to in the Civil Code.

Gallent exercised the care required in such cases, was not guilty of imprudence or negligence. The turning over of the car, causing the injury to plaintiff, was the result of a pure accident, and his demand was therefore properly rejected.