## STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 14-488

MELVIN ANTHONY TASSIN

VERSUS

CONSTANCE MIKITA TASSIN

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
SIXTEENTH JUDICIAL DISTRICT COURT
PARISH OF ST. MARTIN, NO. 76,939
HONORABLE EDWARD M. LEONARD, JR., DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

## PHYLLIS M. KEATY
## JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of J. David Painter, James T. Genovese, and Phyllis M. Keaty, Judges.

**AFFIRMED IN PART; REVERSED IN PART;
AND REMANDED WITH INSTRUCTIONS.**

**Anthony Thibodeaux**
**Law Offices of Anthony Thibodeaux, APLC**
**1201 Brashear Avenue, Suite 413**
**Morgan City, Louisiana 70381**
**(985) 385-5555**
**Counsel for Plaintiff/Appellant:**
    **Melvin Anthony Tassin**

**Sostenes Ruiz, III**
**Attorney at Law**
**1103 Eighth Street**
**Morgan City, Louisiana  70381**
**(985) 384-4567**
**Counsel for Defendant/Appellee:**
> **Constance Mikita Tassin**

**William Edward Bourgeois**
**Lindsey M. Bolton**
**Bourgeois Thorguson, LLC**
**Post Office Box 1688**
**Morgan City, Louisiana  70381-1688**
**(985) 384-2055**
**Counsel for Defendant/Appellee:**
> **Constance Mikita Tassin**

**KEATY, Judge.**

Plaintiff, Melvin Anthony Tassin, appeals the trial court's judgment in favor of Defendant, Constance Mikita Tassin. For the following reasons, the trial court's judgment is affirmed in part, reversed in part, and remanded with instructions.

## FACTS AND PROCEDURAL BACKGROUND

Melvin and Constance were married on February 29, 1992, in Illinois. Prior to their marriage, they executed an Antenuptial Agreement in Illinois on February 21, 1992. Pursuant to that agreement, they determined each of their rights in any and all property owned at the time of marriage and any property they acquired once married. The agreement provided that their property rights would remain the same should they reside in another state ruled by community property laws.

They moved to Laguna Vista, Texas, in 1998, where Melvin purchased, in his name only, a parcel of land. They built a house and made improvements on same. Two years later in 2000, Constance inherited $137,435.05 in cash from her deceased father's estate. On October 29, 2001, they purchased a residence in Houma, Louisiana, for $138,000.00. Two months later on December 13, 2001, they enlarged their backyard in Houma by purchasing additional footage for $2,500.00. They acquired both parcels of the Houma property in both of their names. They subsequently sold the Houma residence on February 5, 2003, for $147,000.00.

Prior to the sale of the Houma residence, on March 14, 2002, they purchased another house located in Stephensville, Louisiana, for $115,000.00. It was purchased in both of their names. They spent approximately $52,000.00 to remodel the Stephensville residence, where Constance resided until September

2010.[1]  Melvin continued to live at the house after her departure.  Melvin and Constance subsequently divorced on August 22, 2011.

On January 31, 2012, Constance filed a petition against Melvin, seeking a temporary restraining order (TRO), possession or equitable rental of their co-owned home, a return of her personal property, and the return of her personal funds.[2]  The trial court granted the TRO that same day.  Melvin filed an answer and reconventional demand and also requested a TRO.  He did not make a request for use and occupancy of the home.  The trial court granted the TRO and ordered the parties to appear before a hearing officer.  After the hearing, which took place on October 10, 2012, the Hearing Officer Conference Report recommended the partitioning of the property following a trial on the merits.  Melvin filed an objection to the recommendations of the hearing officer.

The matter came before the trial court for hearing on January 31, 2013, and it dealt with the issues of partitioning the assets, reimbursements, and the forced sale of the Stephensville residence.  As a result of this hearing, Melvin and Constance executed a consent judgment on February 26, 2013, authorizing her to remove certain items from the home while accompanied by a St. Martin Parish Sheriff's Deputy.  The consent judgment ordered that Leon Kahn, a certified real estate appraiser, be retained to appraise the Stephensville property.  Kahn valued the home at $204,600.00.

---

[1] Although both Constance and Melvin agree that she was no longer domiciled at the house as of September 2010, they argue regarding her reason for leaving.  In brief, Constance contends that she was "ejected" from the house by Melvin, whereas he alleges that Constance "acquired a paramour and moved out of the family residence to live with her paramour."

[2] The petition indicates that the clerk of court for St. Martin Parish received the pleading for filing on both February 3, 2012, and February 10, 2012.

Thereafter, a trial on the merits was held on July 22, 2013, wherein both parties introduced testimony and documentary evidence. On September 3, 2013, the trial court issued its reasons for judgment as well as its judgment in this matter. The trial court found that the parties co-owned the Stephensville property and ordered Melvin to provide Constance with an accounting of all of her funds "that he administered during their marriage and an accounting of the expenses that he listed on the ledger in her name." Melvin was ordered to pay Constance $137,435.05 to reimburse her for her separate, inherited property. Additionally, Melvin was ordered to pay Constance $750.00 per month from the date that she stopped living at the Stephensville residence until the date that the house was sold to account for Melvin's one-half of the fair market rental for his continued use of the home. The trial court ordered that the Stephensville property be partitioned with Constance to receive one-half of its value. Finally, the trial court ordered Melvin to pay court costs. On December 17, 2013, the trial court executed Constance's motion and order to have the property listed for sale at not less than its appraised value. Melvin appeals.

## ASSIGNMENTS OF ERROR

In this instant appeal, Melvin asserts the following assignments of error:

(1) The trial court erred in finding that the purchase price for the Houma residence was $139,801.00;

(2) The trial court erred in finding that March 2, 2003, was the date when the parties purchased the Stephensville residence;

(3) The trial court erred in finding that the Stephensville residence was purchased after the sale of the Houma residence;

(4) The trial court erred in finding that the parties each owned fifty percent of the Stephensville residence without giving Melvin credit for his share of the amount that he paid to purchase the residence;

(5)   The trial court erred in not ordering that the proceeds of the sale of the Stephensville residence be distributed to Melvin in proportion to his contribution toward the payment of the purchase price of the property;

(6)   The trial court erred by not considering and finding that the proceeds of the sale of the Houma residence, which was purchased in part with Constance's inheritance funds, was considered as her means to contribute to her living expenses;

(7)   The trial court erred by not considering Constance's living expenses from the date she received the proceeds of the sale of the Houma residence;

(8)   The trial court erred by not considering Constance's use of the funds generated by the sale of the Houma residence;

(9)   The trial court erred by finding that Constance was entitled to reimbursement of the rental value of the Stephensville residence;

(10)  The trial court erred by valuing the rent of the Stephensville residence at $1,500.00;

(11)  The trial court erred by ordering Melvin to pay Constance $750.00 per month from the date that she no longer lived at the Stephensville residence until the sale of the house as fair value for his exclusive enjoyment of the property owned in indivision;

(12)  The trial court erred by finding that Melvin owed Constance $137,435.05 for reimbursement of the separate funds she inherited from her father;

(13)  The trial court erred by ordering the parties to share the proceeds of the sale of the Stephensville residence equally, and;

(14)  The trial court erred by ordering Melvin to pay court costs.

## STANDARD OF REVIEW

In *Rosell v. ESCO*, 549 So.2d 840, 844 (La.1989) (citations omitted), the supreme court discussed the pertinent standard of review with respect to the instant case:

It is well settled that a court of appeal may not set aside a trial court's or a jury's finding of fact in the absence of "manifest error" or unless it is "clearly wrong," and where there is conflict in the

4

testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. The appellate review of fact is not completed by reading only so much of the record as will reveal a reasonable factual basis for the findings in the trial court, but if the trial court or jury findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Where there are two permissible views of the evidence, the factfinder's choice between them cannot be manifestly erroneous or clearly wrong. . . .

When findings are based on determinations regarding the credibility of witnesses, the manifest error—clearly wrong standard demands great deference to the trier of fact's findings; for only the factfinder can be aware of the variations in demeanor and tone of voice that bears so heavily on the listener's understanding and belief in what is said.

Thus, the manifest error—clearly wrong standard is applicable to the instant matter.

## DISCUSSION

### I. Purchase Price of Houma Residence and Purchase Date of Stephensville Residence

Given the extensive assignments of error, we will combine them into the seven issues asserted by Melvin. The first issue is whether the trial court erred in finding that the Stephensville residence was purchased after the sale of the Houma residence. In his first assignment of error, Melvin contends that the trial court erred in finding that the purchase price for the Houma residence was $139,801.00. Rather, Melvin alleges that it should have found that the purchase price was $138,000.00. Constance agrees with Melvin, asserting that the trial court's finding was merely a technical error contained only within the reasons for judgment.

Our review of the Act of Sale shows that the Houma residence was purchased for $138,000.00 rather than $139,801.00. Even though the reasons for judgment refer to the incorrect price, the judgment is silent regarding same. In

5

Louisiana, the trial court's oral and written reasons for judgment are not considered as part of the judgment. *Wooley v. Lucksinger*, 09-571, 09-584, 09-585, 09-586 (La. 4/1/11), 61 So.3d 507. Thus, appellate courts review only the judgment and not the reasons for judgment. *Id.* Constance nevertheless agrees with Melvin. Assignment of error number one, therefore, is not an issue and is without merit.

In his second assignment of error, Melvin contends that the trial court erred in finding that March 2, 2003, was the date when the parties purchased the Stephensville residence. Melvin alleges that the purchase date is March 14, 2002.

Our review of the Cash Deed contained in the record shows that March 14, 2002, is the date when the parties purchased the Stephensville residence. Even though the reasons for judgment refer to the incorrect date, the judgment is silent regarding same. As mentioned above, we only review the trial court's judgment and not its oral and written reasons for judgment since they are not considered as part of the judgment. *Wooley*, 61 So.3d 507. Constance nevertheless agrees with Melvin in that the correct purchase date is March 14, 2002. Assignment of error number two, therefore, is not an issue and is without merit.

In his third assignment of error, Melvin contends that the trial court erred in finding that the Stephensville residence was purchased after the sale of the Houma residence.

As mentioned above, Constance and Melvin agree that they purchased the Stephensville residence on March 14, 2002. The Act of Cash Sale shows that the Houma residence was sold approximately eleven months later on February 5, 2003. Thus, the Stephensville residence was not purchased after the sale of the Houma residence. The judgment, however, is silent regarding the foregoing. The trial court only mentions the purchase of the Stephensville residence and sale of the

6

Houma residence in its reasons for judgment. We review the trial court's judgment rather than its oral and written reasons for judgment since they are not considered as part of the judgment. *Wooley*, 61 So.3d 507. Accordingly, assignment of error number three is not an issue and is without merit.

Finally, we note that Melvin does not assert an assignment of error with respect to the purchase price of the Houma residence. He states, however, that an issue on appeal is whether the trial court erred in finding that the Houma residence was sold for $147,000.00. As correctly pointed out by Constance in her brief, Melvin admits that the Houma property was sold for $147,000.00 in the factual section of his brief. Thus, this is a non-issue and will not be considered.

## II. Consideration

Another issue asserted by Melvin is whether the trial court should have looked at the consideration contributed by the parties when determining the percentages of ownership of the Stephensville property. Melvin asserts in his fourth assignment of error that the trial court erred in finding that the parties each owned fifty percent of the Stephensville residence without giving him credit for his share of the amount that he paid to purchase the residence. Melvin alleges that he used the sale proceeds of his separate residence in Laguna, Texas, which equated to $126,281.50, to purchase the Stephensville residence for $115,000.00 on March 14, 2002. Since one hundred percent of his separate funds were used to purchase the Stephensville residence, Melvin contends that he is entitled to one hundred percent of the sales proceeds. In his fifth assignment of error, Melvin contends that the trial court erred in not ordering that the sale proceeds of the Stephensville residence be distributed to him in proportion to his contribution toward the payment of the purchase price of the property.

In its reasons for judgment, the trial court noted that Melvin kept a detailed ledger of living expenses. The trial court stated that Melvin considered that both he and Constance were equally responsible for living expense payments even though his earnings were greater than Constance's earnings. The trial court noted that Melvin kept the ledger because he believed that the Antenuptial Agreement required him to do so.

As to this ledger, Melvin entered two exhibits into the record. Exhibit 11 is an accounting of Melvin's income, expenses, and balance. This exhibit encompasses the time from March 1, 1992, through September 9, 2010. Exhibit 12 is an accounting of Constance's income, expenses, and balance. This exhibit encompasses the time from March 1, 1992, through September 9, 2010. Melvin testified that he did not keep any invoices that he utilized in preparing the ledger. Melvin testified that prior to her departure from the Stephensville residence, he never paid Constance for services she performed around the house, i.e., cleaning, cutting grass, preparing food, and other household services.

Upon questioning from the trial court, Melvin testified that during the marriage, he took every expense that they incurred daily and put half on his side of the ledger. Melvin testified that he never paid anything towards her part of the living expenses. When she received her inheritance, Melvin testified that she owed him money on her side of the ledger for living expenses going back to the date of their marriage. Melvin testified that he would deduct those expenses from her inheritance to reimburse himself for what he paid for her previously.

The trial court questioned Constance about the ledger, asking whether she knew that Melvin would keep a ledger of "every expense incurred during your marriage for utilities or food, for clothing, for everything . . . and that you would be

8

responsible for exactly one-half of it." Constance testified that she knew there was a ledger although when they moved to Louisiana, he asked her not to work since he was sick. Constance testified that she "took on the responsibilities of everything, including manpower, to make sure that the house was running correctly." Constance testified that she "was busy more than forty hours a week. I was at his beckon call for everything. I chauffeured, did his haircuts, I did everything. . . . I cleaned up after everything." The trial court asked Constance whether she knew that her inheritance would be reduced by the amount of money that Melvin showed as her half of the living expenses from the marriage. Constance testified that although she was aware, she told Melvin that was unfair once they moved to Louisiana and she quit her job. Constance agreed with Melvin by testifying that she did not receive anything for her labor around the house.

The trial court rejected the calculations provided by Melvin in his ledger regarding the properties. The trial court stated that the ledger lacked supporting documentation or testimony as to how these numbers were assigned. Since it rejected Defendant's Exhibits 11 and 12, the trial court found that "[t]he sales of co-owners are presumed to be equal since there is no other provision in the Act of Sale[]" pursuant to La.Civ.Code art. 797.[3]

At the outset, we agree with the trial court that there are no invoices in the record supporting the numbers contained in Melvin's ledger. We have reviewed the Cash Deed regarding the Stephensville property, which was silent as to the percentage each individual should acquire upon the sale of the property. Since the trial court found that Melvin and Constance owned the property in indivision and

_____

[3] Louisiana Civil Code Article 797 provides that "[o]wnership of the same thing by two or more persons is ownership in indivision. In the absence of other provisions of law or juridical act, the shares of all co-owners are presumed to be equal."

since the Act of Sale was silent regarding percentages upon sale, La.Civ.Code art. 797 requires the parties to equally share the proceeds. Thus, the trial court was not manifestly erroneous in this regard.

There were also credibility issues with respect to Melvin, as the record shows that Melvin displayed reliability and behavioral issues throughout the divorce and subsequent legal proceedings. Specifically, Constance's counsel tendered as a witness Captain Ricky Acosta of the St. Martin Parish Sheriff's Office. He testified that he responded to numerous complaints made by Melvin. Captain Acosta testified that Melvin repeatedly called the sheriff's office, alleging that his Stephensville residence was broken into by Constance and a male companion. Captain Acosta testified that on one occasion Melvin alleged to have trapped Constance and a man in his attic. On another occasion, Melvin alleged that Constance and her companion were trapped in the utility room according to Captain Acosta. He testified that Constance and her male companion were never found during the sheriff department's visits to the Stephensville residence.

The Hearing Officer Conference Report further states that Melvin "became very disrespectful during the [Hearing Officer Conference] to the hearing officer on several occasions." During the January 31, 2013 hearing on the protective order, Melvin displayed behavioral issues as he made several statements while Constance was testifying. After some of his outbursts, the trial court stated: "Mr. Tassin. You're to be quiet now. I'm listening to Mrs. Tassin right now." The trial court told Melvin that he was to place certain items at the front door to be retrieved by Constance. Melvin replied that he would "put them out on the [curb]." The trial court responded by stating: "No, you won't put them out on the [curb]. I said to the front door. You're not going to put them on the [curb]."

Based on our review of the record, the trial court believed Constance's and Captain Acosta's testimony was more credible than Melvin's testimony, and we cannot say that the trial court was manifestly erroneous. Accordingly, Melvin's fourth and fifth assignments of error are without merit.

**III.    Propriety of Fair Value of Enjoyment Award**

In his ninth assignment of error, Melvin questions whether Constance is entitled to reimbursement of one-half of the rental value of the Stephensville property despite her alleged failure to file a claim seeking possession and use of same. Melvin contends that Constance never demanded the exclusive use of the Stephensville property held in indivision. Melvin asserts that Constance never wanted to possess the property after she moved out in September 2010.

We review the petition to determine whether Constance made a claim for possession. Constance alleged that she and Melvin, in their capacity as co-owners, owned and possessed the Stephensville property. She asserted that she sent correspondence to Melvin on April 7, 2011, seeking possession or equitable rental for the co-owned property in accordance with La.Civ.Code art. 802. Constance alleged that Melvin was served in open court on August 22, 2011, with another request to pay equitable rental. Based on the foregoing, we find that Constance made a possessory claim and request for equitable rental.

Melvin alleges that the trial court's ruling ordering him to pay rental reimbursement to Constance retroactive to the date when she no longer lived at the residence, i.e., September 2010, is contrary to statutory authority and jurisprudence. The statutory law Melvin uses in support of his position is La.R.S. 9:374(C), which provides:

11

A spouse who, in accordance with the provisions of Subsection A or B of this Section, uses and occupies or is awarded by the court the use and occupancy of the family residence, a community immovable occupied as a residence . . . shall not be liable to the other spouse for rental for the use and occupancy, except as hereafter provided.  If the court awards use and occupancy to a spouse, it shall at that time determine whether to award rental for the use and occupancy and, if so, the amount of the rent.  The parties may agree to defer the rental issue for decision in the partition proceedings.  If the parties agreed at the time of the award of use and occupancy to defer the rental issue, the court may make an award of rental retroactive to the date of the award of use and occupancy.

Based on the foregoing, Melvin contends that any reimbursement award of rental value must be ordered contemporaneously with the granting of the use of the thing held in indivision such that the obligation to pay rental reimbursement commences at the time of the award of use.  Obligating Melvin to reimburse Constance for the rental value of the Stephensville property retroactive to September 2010 is prejudicial and prohibited by law according to Melvin.

Since Subparagraph C is applicable only if a spouse is "in accordance with the provisions of Subsection A or B[,]" we must first determine whether those previous subsections are applicable.  Subparagraph A of La.R.S. 9:374 pertains to situations when the family residence is classified as "separate property" of either spouse.  Constance alleged in her petition that she and Melvin, in their capacity as co-owners, owned and possessed the Stephensville property.  Thus, Subparagraph A is inapplicable to both parties.

Louisiana Revised Statutes 9:374(B) deals with the family residence that is owned by the spouses in indivision.  Subparagraph B only applies if either spouse petitioned for "use and occupancy of the family residence[.]"  *Id*.  As there is no evidence in the record showing that either Constance or Melvin petitioned for same, Subparagraph B is inapplicable.

Finally, Subparagraph C of La.R.S. 9:374 is applicable where Subparagraphs A and B have been applied or where a trial court awards use and occupancy. In this case, the trial court never awarded use and occupancy to either party. Since the parties never lived under the community property regime and since neither party petitioned for use and occupancy, La.R.S. 9:374(C) does not apply to this situation.

We also find that the jurisprudence cited by Melvin is inapplicable. Specifically, he cites *McCarroll v. McCarroll*, 96-2700 (La. 10/21/97), 701 So.2d 1280, for the proposition that La.R.S. 9:374(C) applies and that the trial court may not award retroactive rent. The *McCarroll* case involved community property and a verbal agreement between the parties regarding continued use and occupancy of the family home. In the present case, there is no verbal agreement for continued use and occupancy. We note that the supreme court in *McCarroll*, 701 So.2d at 1289, applied Subparagraph C and opined that "[f]inding the issue now squarely before us, we hold that rental payments may not be retroactively assessed under La.R.S. 9:374(C) unless otherwise agreed by the spouses or ordered by the court." Louisiana Revised Statutes 9:374(C), however, has been amended approximately seven times since 1997, which was when the *McCarroll* opinion was rendered. Thus, Melvin's reliance on *McCarroll* is misplaced.

The trial court's judgment and reasons for judgment show that it relied on La.Civ.Code arts. 801 and 807. Louisiana Civil Code Article 801 provides that "[t]he use and management of the thing held in indivision is determined by agreement of all the co-owners." Louisiana Civil Code Article 807 provides that "[n]o one may be compelled to hold a thing in indivision with another unless the contrary has been provided by law or juridical act." In its judgment regarding the

13

Stephensville property, the trial court found that Melvin and Constance were co-owners in indivision. The trial court found that Melvin owed Constance $750.00 per month from the date that she no longer lived at the residence "until the sale of the house as fair value for his exclusive enjoyment of the property owned in indivision." The trial court ordered that the property be partitioned with the parties equally sharing the sale proceeds.

We find that the trial court was not manifestly erroneous in holding that Constance was entitled to reimbursement of one-half of the rental value of the Stephensville property. Accordingly, Melvin's ninth assignment of error is without merit.

## IV. Fair Value for Co-Owner's Exclusive Use

Melvin further argues that the trial court lacked sufficient evidence to determine the rental value of the Stephensville property. In his tenth assignment of error, Melvin contends that the trial court erred by valuing the rent at $1,500.00 per month. In his eleventh assignment of error, Melvin contends that the trial court erred by ordering him to pay Constance $750.00 per month from the date when she no longer lived at the residence until the sale of the house.

The evidence contained in the record shows that a hearing on a protective order took place on January 31, 2013. At that hearing, the trial court ordered an appraisal of the Stephensville residence. The record contains a consent judgment executed by the parties and signed by the trial court on February 26, 2013. This consent judgment memorialized the trial court's January 31, 2013 oral order. The house was subsequently appraised for $204,600.00 by Kahn.

In response to the appraisal, the trial court stated the following in its reasons for judgment:

With regard to the fair value for the co-owner's exclusive enjoyment, the Court finds that the fair value of enjoyment is equal to the value of fair rental. An appraisal of the property was provided as evidence (Defendant's Exhibit 7) however the appraisal only provided the fair market value ($204,600.00). Based upon a review of the appraisal, the Court finds that the property would rent for at least $1,500.00 per month, her share being $750.00 per month.

"The decision to award rent to a non-occupant spouse rests within the discretion of the trial [court]." *Piccione v. Piccione*, 01-1086, pp. 10-11 (La.App. 3 Cir. 5/22/02), 824 So.2d 427, 433. In the present case, the record contains the appraisal. The trial court's judgment and reasons for judgment, however, are "devoid of any evidence to establish how the [$1,500.00] figure was derived[.]" *Cryer v. Cryer*, 96-2741, p. 9 (La.App. 1 Cir. 12/29/97), 706 So.2d 167, 172.

Louisiana Code of Civil Procedure Article 2164 provides that "[t]he appellate court shall render any judgment which is just, legal, and proper upon the record on appeal." This article permits an appellate court "to remand a case when the interest of justice is served." *Vallo v. Gayle Oil Co., Inc.*, 94-1238, p. 9 (La. 11/30/94), 646 So.2d 859, 866. Based on the record before us, we cannot determine whether the trial court erred in finding that $1,500.00 per month equates to fair rental value. Thus, the portion of the judgment ordering Melvin to pay Constance rental value is reversed. Therefore, "in the interests of justice, we remand the matter to the trial court for a more complete development of the record and consideration of this issue in accordance with the views expressed herein." *Cryer*, 706 So.2d at 172.

## V. Spousal Contributions

Melvin next contends that the trial court failed to consider Constance's means to pay her living expenses and that she should have been obligated to pay her living expenses incurred in proportion to those means. In his sixth assignment

15

of error, Melvin argues that the trial court erred by not considering and finding that the proceeds of the sale of the Houma residence, which was purchased in part with Constance's inheritance funds, was considered as her means to contribute to her living expenses. In his seventh assignment of error, Melvin contends that the trial court erred by not considering Constance's living expenses from the date she received the proceeds of the sale of the Houma residence. In his eighth assignment of error, Melvin contends that the trial court erred by not considering Constance's use of the funds generated by the sale of the Houma residence.

Our review of the reasons for judgment indicates that the trial court based its holding upon La.Civ.Code arts. 2371 and 2373. Louisiana Civil Code Article 2371 provides that "[u]nder the regime of separation of property each spouse acting alone uses, enjoys, and disposes of his property without the consent or concurrence of the other spouse." Louisiana Civil Code Article 2373 provides that "[e]ach spouse contributes to the expenses of the marriage as provided in the matrimonial agreement. In the absence of such a provision, each spouse contributes in proportion to his means."

The reasons for judgment indicate that the trial court reviewed the Antenuptial Agreement by stating the following:

> The Court has carefully read the Antenuptial Agreement. It refers to a ledger in existence at the time the agreement was entered into by the parties. It is silent as to future expenses, and granted him no authority to "administer" her funds or to take the proceeds from the Houma sale to "repay" himself for "her share" of past living expenses. Under the regime of separation of property each spouse acting alone uses, enjoys and disposes of his property without the consent or concurrence of the other spouse (Civil Code Art. 2371). Regarding the expenses of the marriage, each spouse contributes to the expenses of the marriage as provided in the matrimonial agreement. In the absence of such a provision, each spouse contributes in proportion to his or her means (C.C. Art. 2373).

16

Our review of the Antenuptial Agreement shows that it was indeed silent as to future expenses. Thus, the trial court properly applied La.Civ.Code art. 2373 in making its ruling that each spouse contributes in proportion to his or her means in the absence of an agreement.

The reasons for judgment further indicate that the trial court did not accept the ledger provided by Melvin, finding that there was "no credible evidence that living expenses were to be paid equally or in any other particular manner" and that the numbers were not supported by invoices. Thus, we cannot say that the trial court was manifestly erroneous in this regard, and this issue is without merit. Accordingly, assignments of error six, seven, and eight are without merit.

## VI.   **Houma House Proceeds**

The last issue asserted by Melvin is whether the trial court unfairly ordered him to share the proceeds of the Stephensville property when it failed to award him an equal share of the proceeds of the sale of the Houma property. In his twelfth assignment of error, Melvin alleges that the trial court erred by finding that he owed Constance $137,435.05 for reimbursement of the separate funds she inherited from her father. In his thirteenth assignment of error, Melvin contends that the trial court erred by ordering them to share the proceeds of the sale of the Stephensville residence equally.

The reasons for judgment in the instant case show that the trial court believed the Houma property was primarily purchased with Constance's funds. It further believed that the Stephensville property was jointly purchased. We, therefore, look to the record to see if evidence exists supporting the trial court's ruling.

17

The trial transcript shows that Melvin's counsel asked Constance: "So we had the house in Houma that was first purchased with cash, that was money from your inheritance, correct?" Constance replied: "Correct." Constance's testimony indicates that she inherited approximately $137,500.00 to $140,000.00. When asked whether approximately $137,500.00 of her inherited funds were used to purchase the Houma residence, Constance replied: "That is correct." Constance testified that the Houma residence cost $138.000.00. Constance, however, was unable to say that the entire purchase of the Houma property was from her inheritance. Constance was also unable to say whether Melvin contributed to the purchase of the Houma property.

After considering the credibility of the witnesses and the weight of the evidence, the trial court concluded that the parties were co-owners in indivision of the Houma property. The trial court likewise concluded that the Houma residence was purchased with "some, most, or all of [Constance's] inherited money." We cannot say that the trial court was manifestly erroneous in this regard. Thus, assignment of error twelve is without merit.

As to the Stephensville property, Constance testified that after they sold the Houma residence, they used the sale proceeds to purchase certificates of deposits (CDs). She testified that they cashed some of the CDs in order to renovate and upgrade the Stephensville house. Constance testified that while they resided in the Stephensville home, their marital problems began. During that time, Constance testified that she believed that they jointly owned the Stephensville home.

The trial court, after considering the credibility of the witnesses and the weight of the evidence, concluded that the parties were co-owners in indivision of the Stephensville property. Based on the foregoing, we cannot say that the trial

18

court was manifestly erroneous in this regard. Thus, assignment of error thirteen is without merit.

Finally, in his fourteenth assignment of error, Melvin contends that the trial court erred by ordering him to pay court costs. Since we find that the trial court was not manifestly erroneous as discussed above, we find that the trial court did not abuse its discretion in ordering Melvin to pay court costs. *See Gronlund v. Mike Donner, LLC*, 12-1169 (La.App. 3 Cir. 3/13/13), 110 So.3d 708.

**DECREE**

The trial court's judgment is affirmed in part, reversed in part, and remanded with instructions. All costs of this appeal are assessed to Melvin Anthony Tassin.

**AFFIRMED IN PART; REVERSED IN PART; AND REMANDED WITH INSTRUCTIONS.**