# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 17-157

**STATE OF LOUISIANA**

**VERSUS**

**GEORGE D. LOWDINS**

**\*\*\*\*\*\*\*\*\*\***

APPEAL FROM THE
THIRTY-FIRST JUDICIAL DISTRICT COURT
PARISH OF JEFFERSON DAVIS, NO. CR-427-14
HONORABLE H. WARD FONTENOT, DISTRICT JUDGE

**\*\*\*\*\*\*\*\*\*\***

**MARC T. AMY
JUDGE**

**\*\*\*\*\*\*\*\*\*\***

Court composed of Marc T. Amy, Elizabeth A. Pickett, and Billy Howard Ezell, Judges.

**AFFIRMED.**

**Michael C. Cassidy**
**District Attorney**
**Bennett R. LaPoint**
**Assistant District Attorney**
**Post Office Box 1388**
**Jennings, LA   70546**
**(337) 824-1893**
**COUNSEL FOR APPELLEE:**
        **State of Louisiana**

**Edward K. Bauman**
**Louisiana Appellate Project**
**Post Office Box 1641**
**Lake Charles, LA   70602-1641**
**(337) 491-0570**
**COUNSEL FOR DEFENDANT/APPELLANT:**
        **George D. Lowdins**

**AMY, Judge.**

Following police investigation of a domestic disturbance during which an officer was shot, the State charged the defendant, a prior felon, with attempted first degree murder and unlawful possession of a firearm by a convicted felon. A jury convicted the defendant as charged. The trial court sentenced the defendant to fifty years with the Department of Corrections for the attempted first degree murder charge and twenty years for the firearm charge, with the sentences to run concurrently. The defendant appeals. For the following reasons, we affirm with instructions.

## Factual and Procedural Background

On June 23, 2014, Officer Ricky Benoit and Officer Christopher Aguillard of the Jennings Police Department arrived at a residence in response to a domestic disturbance call. According to Officer Benoit's testimony, the officers began speaking with a woman in the residence who was "crying uncontrollably" and "had a mark or . . . as bleeding on her face as if she had been hit or struck." Officer Benoit testified that he heard a noise and began to move throughout the residence in order to investigate the source, while Officer Aguillard continued to speak with the woman. Officer Benoit testified that upon seeing movement, he yelled for the source of the movement to come out. Thereafter, Officer Benoit was shot in the neck and shoulder area, receiving disabling injuries. Officer Aguillard testified that upon hearing the gunshot, he pursued and successfully detained a man fleeing the area from which the gunshot noise emanated. He identified the man as George David Lowdins. Afterward, the defendant, George David Lowdins, was charged with attempted first degree murder, a violation of La.R.S. 14:30(A)(2) and 14:27, as well as unlawful possession of a firearm by a convicted felon, a violation of La.R.S. 14:95.1.

After originally pleading not guilty to the charges, the defendant filed a motion on October 16, 2014, to change his plea "from not guilty to guilty by reason of

insanity."[1]  On October 21, 2014, the trial court ordered the change in the defendant's plea "from not guilty to guilty by reason of insanity."[2]  The defendant eventually filed another motion to change his plea, requesting a change "from not guilty to not guilty by reason of insanity."  The trial court signed the order granting the plea change "from not guilty to not guilty by reason of insanity."[3]

The defendant also filed a motion for sanity commission as well as a motion for a psychiatric examination concerning his "competency to stand trial and his insanity at the time of the offense with which [he] is charged."  The trial court granted the defendant's motion for sanity commission and appointed Dr. Richard Edwards, III, a Louisiana family practice physician, and Dr. Alfred E. Buxton, PhD, MP, a Louisiana clinical/medical psychologist, to serve on the sanity commission and examine the defendant.  After listening to the testimony of the members of the sanity commission, the trial court ruled the defendant competent, finding that he had "the capacity to understand the proceedings against him" as well as "the ability to assist his counsel in his defense[.]"

On December 10, 2015, the defendant filed another motion to change his plea in which he sought "to change his plea from not guilty and [sic] not guilty by reason of insanity."  On December 15, 2015, the trial court denied the motion, referencing testimony from the sanity commission hearing.  Subsequently, the matter advanced to trial, with the defendant maintaining a plea of not guilty.

---

[1] The pleas allowed by law are guilty, not guilty, not guilty and not guilty by reason of insanity, and *nolo contendere*; a plea of "guilty by reason of insanity" does not exist.  La.Code Crim.P. art. 552.

[2] Thereafter, the defendant filed a second motion to change his plea.  This November 24, 2014, motion also requested a plea change "from not guilty to guilty by reason of insanity."  On December 1, 2014, the trial court again ordered the plea change "from not guilty to guilty by reason of insanity."

[3] The order granting the plea change "from not guilty to not guilty by reason of insanity" was signed by the trial court on January 14, 2015.  However, as discussed later, the defendant filed another motion to change his plea in which he "request[ed] to change his plea from not guilty and [sic] not guilty by reason of insanity" on December 10, 2015.  The trial court denied the motion on December 15, 2015.

During voir dire, the defendant challenged certain jurors for cause, and these challenges were denied. Ultimately, the defendant used all of his peremptory challenges before the end of voir dire. As such, one of the prospective jurors that the defendant challenged for cause was seated as a juror.

After trial, the jury returned a verdict of guilty of attempted first degree murder and guilty of unlawful possession of a firearm by a convicted felon. The trial court sentenced the defendant to serve fifty years for the attempted first degree murder conviction, and the trial court sentenced the defendant to serve thirty years without benefit of probation, suspension, or parole for the firearm conviction. The trial court ordered that the sentences run concurrently and that they be served with the Department of Corrections. The defendant orally presented a motion to reconsider the sentences based on excessiveness. Upon noting an error in the explanation of the statutory maximum sentence on the firearm charge, the trial court amended that sentence to twenty years without benefit of probation, suspension, or parole, but the trial court did not otherwise alter the sentences in response to the defendant's motion. The trial court reiterated that the attempted first degree murder sentence and the amended firearm sentence were to run concurrently. Thereafter, the defendant filed a motion in arrest of judgment based, in part, on a "tainted and bias [sic] jury[.]" The trial court denied that motion.

The defendant appeals his conviction, asserting as error that:

I.     The Trial Court erred in denying Defense counsel's challenges for cause.

II.    The Trial Court erred in accepting Dr. Richard Edwards, III as an expert on forensic mental examinations.

3

**Discussion**

*Errors Patent*

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed for errors patent. An error patent is one which is "discoverable by a mere inspection of the pleadings and proceedings and without inspection of the evidence." La.Code Crim.P. art. 920(2). On review, we note errors with regard to the sentences reflected in the minutes of the sentencing hearing. Namely, the minutes from the sentencing hearing indicate: "The Court stated that there is a statutory clause of 'without benefit of probation, parole or suspension of sentence'." However, the transcript of the sentencing hearing reflects that this restriction was applied only to the defendant's sentence for possession of a firearm by a convicted felon. If there is a conflict between the minutes and the transcript, the transcript prevails. *State v. Wommack*, 00-137 (La.App. 3 Cir. 6/7/00), 770 So.2d 365, *writ denied*, 00-2051 (La. 9/21/01), 797 So.2d 62. Accordingly, we instruct the trial court to correct the sentencing minutes to accurately reflect the transcript that the denial of probation, parole, or suspension of sentence was applied only to the defendant's sentence for possession of a firearm by a convicted felon.

*Denials of Challenges for Cause*

The defendant first questions the trial court's denial of his challenges for cause of prospective jurors Byron Bennett, Frederick Fontenot, Mary Verret,[4] Darlene Guidry, and Joshua Broussard as well as juror Shawn Williams. Recently, in *State v. Clark*, 12-0508, pp. 98-99 (La. 12/19/16), 220 So.3d 583, 663, *petition for cert. filed* (U.S. June 10, 2017) (No. 16-9541), the Louisiana Supreme Court discussed challenges for cause and the standard for appellate review of rulings on cause challenges as follows:

---

[4] The briefs to this court contain the spelling "Verrett," and the transcript contains the spelling "Verret." For consistency purposes, this opinion will use the spelling "Verret" in accordance with the transcript.

4

A challenge for cause should be granted even when a prospective juror declares his ability to remain impartial if the juror's responses, as a whole, reveal facts from which bias, prejudice, or inability to render judgment according to law may be reasonably inferred. *State v. Hallal*, 557 So.2d 1388, 1389-90 (La. 1990). Prejudice is presumed when a challenge for cause is denied erroneously by a trial court and the defendant ultimately exhausts his peremptory challenges. *State v. Robertson*, 92-2660, pp. 3-4 (La. 1/14/94), 630 So.2d 1278, 1280 (citing *State v. Ross*, 623 So.2d 643, 644 (La. 1993)). A trial court is vested with broad discretion in ruling on challenges for cause, and its rulings will be reversed only when a review of the voir dire record as a whole reveals an abuse of discretion. *State v. Robertson*, 92-2660 at p. 4, 630 So.2d at 1280 (citing *State v. Knighton*, 436 So.2d 1141, 1148 (La. 1983)). A refusal by a trial judge to excuse a prospective juror, on the ground that he is not impartial, is not an abuse of discretion when, after further inquiry or instruction ("rehabilitation"), the potential juror has demonstrated a willingness and ability to decide the case impartially according to the law and the evidence. *State v. Copeland*, 530 So.2d 526, 534 (La. 1988) (citing *State v. Welcome*, 458 So.2d 1235, 1241 (La. 1983)).

In addition, LSA-C.Cr.P. art. 800(A) requires an objection at the time of the ruling, which denies a challenge for cause, in order to preserve the claim for appellate review. Article 800(A) also mandates that the nature of the objection and the grounds therefor be stated at the time of the objection. With respect to that provision, this court has made clear:

> Our law is also settled that an objection need not be raised by incantation. "It is sufficient that a party, at the time the ruling or order of the court is made or sought, makes known to the court the action which he desires the court to take, or of his objections to the action of the court, and the grounds therefor." C.Cr.P. 841; *State v. Boutte*, 384 So.2d 773 (La. 1980). The requirement that objection be raised contemporaneously is not meant to be inflexible, but is designed "to promote judicial efficiency and to insure fair play." *State v. Lee*, 346 So.2d 682, 684 (La. 1977). Article 800 should not be read to differ in this respect from Article 841.

*State v. Vanderpool*, 493 So.2d 574, 575 (La. 1986).

As the present case involved an offense necessarily punishable by imprisonment at hard labor, the defendant possessed twelve peremptory challenges. *See* La.Code Crim.P. art. 799. The record reflects that the defendant used all twelve challenges during voir dire, so the defendant need only show that the trial court erred in denying one of his challenges for cause. Thus, to conclude whether there is a

reversible error, we must review the entire voir dire of the six prospective jurors whom the defendant challenged for cause to determine whether there was an abuse of discretion.

Byron Bennett

The defendant challenged Mr. Bennett "because of the fact that [Mr. Bennett] stated that he knows [Officer] Benoit and that he went to school with [Officer Benoit's children]." Following the trial court's denial of the challenge, the only response from the defense was "Okay[,]" such that the defendant failed to lodge a contemporaneous objection. Moreover, the defendant did not exercise a peremptory challenge on Mr. Bennett. In fact, later in voir dire, the defendant unequivocally accepted Mr. Bennett as a juror. Notably, Mr. Bennett ultimately did not serve on the jury because the trial court released Mr. Bennett from service upon explaining that "his domicile was very much in question" and "[h]e had no transportation" to the courthouse. We find no abuse of the trial court's discretion as to Mr. Bennett.

Frederick Fontenot

The defendant challenged Mr. Fontenot because "his niece is very good friends with [Officer] Benoit's daughter[.]" After the trial court refused to grant the challenge, the defense proffered no response, thus failing to lodge a contemporaneous objection. Regardless, although Mr. Fontenot revealed that he heard about the incident from his niece who is "really good friends" with Officer Benoit's daughter, Mr. Fontenot answered affirmatively when asked if he "would make [his] decision solely upon what [he] hear[s] in the courtroom and not about what [he has] already heard, or [his] feelings towards the Benoits, or anything of that nature[.]"

Later during voir dire, the defendant challenged Mr. Fontenot for cause on the grounds that he was "too tied up for law enforcement[.]" The trial court denied this challenge too, and the defendant responded only with "So I'll use a peremptory on him."

6

In any event, the record shows no abuse of discretion by the trial court in denying this cause challenge. During voir dire, Mr. Fontenot revealed that he is a juvenile probation officer; served with one of the State's attorneys on a juvenile substance abuse prevention coalition, which had not been going on "for a couple of years now, a few years[;]" knows the defense attorney "from [the defense attorney's] work in Allen Parish with the court there[;]" and "several years" ago played basketball with the defendant but does not "know him personally." Louisiana Code of Criminal Procedure Article 797 provides, in pertinent part, for a challenge for cause if the "juror is not impartial" or if "[t]he relationship . . . between the juror and the defendant, . . . the district attorney, or defense counsel, is such that it is reasonable to conclude that it would influence the juror in arriving at a verdict[.]" La.Code Crim.P. art. 797(3). However, when the trial court asked whether he had "such a strong connection with law enforcement that [he] couldn't be fair to a defendant in a criminal prosecution[,]" Mr. Fontenot responded, "No, sir[.]" Further, when the trial court asked whether he could "be independent of any feeling [he has] toward these people[,]" Mr. Fontenot replied, "I believe so, your Honor."

Thus, concerning Mr. Fontenot, the record as a whole shows no abuse of discretion by the trial court.

Mary Verret

The defendant challenged Ms. Verret because "she just seemed . . . to have too many connections with the district attorney's office and the sheriff's office, and the fact that her son was in law enforcement she would have a certain feeling that that could have been my son that got shot when he was a fellow officer." When the trial court denied the challenge, the defendant responded, "Okay. Then I use a peremptory on her[,]" thus failing to lodge a contemporaneous objection.

Nonetheless, the trial court did not abuse its discretion in denying this challenge. As discussed previously, La.Code Crim.P. art. 797(3) provides grounds for

a cause challenge if the juror has a relationship with the district attorney, but only if the relationship "is such that it is reasonable to conclude that it would influence the juror in arriving at a verdict[.]" La.Code Crim.P. art. 797(3). Additionally, "a juror's relationship to a law enforcement officer is not, of itself, grounds for a challenge for cause. Rather, the question presented is whether the prospective juror could assess the credibility of each witness independent of his or her relationship with members of law enforcement." *State v. Dorsey*, 10-0216, p. 39 (La. 9/7/11), 74 So.3d 603, 631. Further, "[s]uch determinations are within the great discretion of the trial judge and will not be overturned absent an abuse of that discretion." *State v. Smith*, 430 So.2d 31, 38 (La.1983).

Here, the trial court asked Ms. Verret whether she could "put aside any personal feelings towards the sheriff or [district attorney,]" and Ms. Verret answered, "Yes." The trial court further asked if she could "be fair to both sides in this case and follow the law." To which Ms. Verret replied, "Yes, sir, I think I can." Therefore, Ms. Verret's answers demonstrated that she would decide the case independent of her relationships and not be influenced by them. We conclude that the trial court did not abuse its discretion in denying the cause challenge.

Darlene Guidry

The defendant challenged Ms. Guidry for cause after it was revealed during voir dire that Ms. Guidry and her husband were "recently" involved in a case in which they were sued by a party represented by the defense attorney. The trial court denied the challenge, and the response from the defense was "Okay[,]" thus failing to lodge a contemporaneous objection. Notably, the defendant did not have to use a peremptory challenge to prevent Ms. Guidry from serving on the jury. Instead, Ms. Guidry was dismissed from service because the State used a peremptory challenge to remove her. We discern no abuse of the trial court's discretion with regard to Ms. Guidry.

8

Joshua Broussard

The defendant challenged Mr. Broussard "because he said that if - - if you pointed - - if you shoot someone, you always meant to kill them[.]" After the trial court denied the challenge, the only response from the defense was to use a peremptory challenge to remove Mr. Broussard, thus failing to lodge a contemporaneous objection.

Regardless, Mr. Broussard's voir dire does not reveal an abuse of discretion. In denying the challenge, the trial judge explained that his "appreciation of what [Mr. Broussard] was saying is you don't point a gun at people" because "it's just an unsafe thing to do." The trial judge continued that Mr. Broussard "wasn't talking about intent to kill. He was talking about the use of firearms as being too dangerous, and that was the way he was taught." Additionally, earlier during voir dire, Mr. Broussard was asked if there was anything that would not make him a fair and impartial juror; he responded that "there's nothing that would keep me from being fair and impartial." Thus, Mr. Broussard's voir dire does not reveal an abuse of discretion by the trial court.

Shawn Williams

The defendant did, however, timely object to the trial court's denial of his challenge for cause of Shawn Williams, who was eventually seated as a juror. When the defendant first urged the challenge, the trial court denied the challenge, and the defendant said nothing in response to the denial. However, the defendant later reiterated his challenge for cause of Ms. Williams based on the same reason as before. The trial court again declined the challenge and accepted Ms. Williams as a juror. Like in *Vanderpool*, 493 So.2d 574, the defendant's re-urging of the challenge served as an objection to the trial court's earlier denial. In the re-urging of the challenge, the defendant made it "clear enough" that he wanted Ms. Williams excused for cause "and voiced the reasons why." *Id.* at 575. By the time the defendant re-urged his

9

challenge for cause of Ms. Williams, the defendant had already exhausted his peremptory challenges. Thus, to determine whether reversible error exists, we examine Ms. Williams's entire voir dire to determine whether the trial court abused its discretion in denying the defendant's challenge for cause. *See State v. Odenbaugh*, 10-268 (La. 12/6/11), 82 So.3d 215.

The defendant's challenge for cause of Ms. Williams was based on her relationship with the State's attorney. The State's attorney volunteered during voir dire that he and Ms. Williams "socialize" and that they "live about four houses apart." The State's attorney further explained that "since [Ms. Williams] moved in, [they]'ve become really good friends" and that Ms. Williams is "really good friends" with his wife. When asked whether she would agree with the statement that she and the State's attorney are friends, Ms. Williams responded, "Yes[.]" As discussed previously, La.Code Crim.P. art. 797(3) provides a challenge for cause if a prospective juror's friendship with "the district attorney . . . is such that it is reasonable to conclude that it would influence the juror in arriving at a verdict[.]" A relationship between a prospective juror and the district attorney, even one of blood or marriage, does not automatically disqualify the prospective juror from service. *State v. Juniors*, 03-2425 (La. 6/29/05), 915 So.2d 291, *cert. denied*, 547 U.S. 1115, 126 S.Ct. 1940 (2006). Rather, the relationship is only sufficient to disqualify the juror if it is reasonable to conclude that the relationship would influence the juror's decision on the verdict. *Id.*

In *State v. Carthan*, 377 So.2d 308 (La.1979), the prospective juror had known the State's attorney since high school, considered him a friend, and saw him from time to time at social events. The supreme court held that the trial court had not abused its discretion in denying the challenge for cause. *Id.* The supreme court reached this conclusion because the prospective juror "clearly stated that his acquaintance with the

10

prosecuting attorney would not interfere with his being fair and impartial and that he would be guided strictly by the facts of the case." *Id.* at 312.

Here, the trial court explained to Ms. Williams that while "[s]ocial ties are very strong influences sometimes," the court would be "asking [her] now to put aside [her] friendships and all that carries with it and decide this case" and to "give [the defendant] being tried as fair a trial as if [she] didn't know anybody involved and despite how it might affect the way [the State's attorney] feels." The trial court asked Ms. Williams whether she could "put it aside that [she] - - [her] friendship aside and decide it as though [she] didn't know him." Ms. Williams responded, "Yes, sir, I believe I can." When earlier asked by the trial court whether she thought she could "decide the case solely on the evidence presented[,]" Ms. Williams answered affirmatively. Moreover, later during voir dire, Ms. Williams further provided assurance when she stated that she could "make an educated decision" after "hearing everything[.]"

Like the juror in *Carthan*, 377 So.2d 308, Ms. Williams clearly stated that her relationship with the State's attorney would not prevent her from rendering a fair verdict. She also answered affirmatively when asked whether she would be able to decide the case solely on the evidence presented at trial. Thus, having reviewed the transcript in its entirety, we find no abuse of the trial court's discretion in its determination that Ms. Williams's relationship with the State's attorney, as described during voir dire, did not meet the standard of La.Code Crim.P. art. 797(3).

Nor does the rest of Ms. Williams's voir dire reveal that the trial court committed an abuse of discretion. When the trial court briefly described the facts and parties involved to the potential jurors and asked whether anyone remembered the incident, Ms. Williams explained that she "remember[ed] . . . a fundraiser[.]" Louisiana Code of Criminal Procedure Article 797 provides for a challenge for cause if a prospective "juror is not impartial, whatever the cause of [the] partiality."

11

La.Code Crim.P. art. 797(2). *State v. Heard*, 263 La. 484, 268 So.2d 628 (1972), the potential juror admitted that he had formed some opinion on the case based on rumor and talk he had overheard. Nonetheless, the supreme court concluded that the trial court did not abuse its discretion in declining to excuse the potential juror because the potential juror indicated that he could objectively determine the defendant's guilt or innocence and decide the case solely on the evidence presented. *Id.*

Here, when questioned whether she remembered anything about the incident itself other than hearing about a fundraiser, Ms. Williams responded, "No, I don't." The trial court further inquired whether knowledge about a fundraiser gave Ms. Williams sympathy one way or the other about the case, and she responded, "No[.]" The trial court expounded that it was concerned with people "decid[ing] the case solely on the evidence presented" and asked Ms. Williams whether she thought she was capable of doing that. Ms. Williams responded, "I do." Like the juror in *Heard*, 263 La. 484, Ms. Williams affirmed that she would not allow knowledge of the fundraiser to guide her decision and that she would decide the case solely on the evidence presented at trial.

Additionally, on her juror questionnaire, Ms. Williams reported that she was not sure if she would hold the defendant's failure to testify against him. Louisiana Code of Criminal Procedure Article 797 provides for a challenge for cause if a prospective "juror will not accept the law as given . . . by the court." La.Code Crim.P. art. 797(4). In *State v. Ellis*, 28-282 (La.App. 2 Cir. 6/26/96), 677 So.2d 617, *writ denied*, 96-1991 (La. 2/21/97), 688 So.2d 521, the supreme court held that the trial court had not erred in refusing to grant cause challenges for prospective jurors who initially stated that they might have trouble applying the law. The supreme court explained that, after further explanation of the law, the prospective jurors were found to have abandoned their earlier position by no longer volunteering that it was a problem for them. *Id.* Likewise, Ms. Williams initially expressed uncertainty in her

juror questionnaire about holding the defendant's failure to testify against him. However, after the trial court explained the law and the State's attorney asked whether anyone continued to have reservations about applying the law, Ms. Williams no longer volunteered that it was a problem for her.

Further, Ms. Williams stated that she believed she "would be a good juror" because she could "after hearing everything . . . make an educated decision[.]" Additionally, Ms. Williams stated that she had been on a jury prior to this case. She also explained that she has "confidence in the judicial system[,]" "think[s] it works[,]" and "feel[s] like it's necessary[.]" We find that the trial court did not abuse its discretion in denying the challenge for cause of Ms. Williams. Accordingly, the defendant's assignment of error regarding juror Shawn Williams is without merit.

*Qualification of Dr. Edwards as an Expert*

The trial court appointed Dr. Richard Edwards, III, a Louisiana family practice physician, and Dr. Alfred E. Buxton, PhD, MP, a Louisiana clinical/medical psychologist to serve on the sanity commission. The defendant challenges the trial court's acceptance of Dr. Edwards as an expert in the field of forensic mental examinations for the purposes of the sanity commission. The qualifications for the members of a sanity commission are given in La.Code Crim.P. art. 644(A), which provides in pertinent part that:

> The sanity commission shall consist of at least two and not more than three members who are licensed to practice medicine in Louisiana, who have been in the actual practice of medicine for not less than three consecutive years immediately preceding the appointment, and who are qualified by training or experience in forensic evaluations.

The long-standing rule is that selection of physicians to serve on the sanity commission rests within the sound discretion of the trial judge and should not be overturned absent an abuse of discretion. *State v. Vince*, 305 So.2d 916 (La.1974).

In *State v. Rains*, 12-615 (La.App. 3 Cir. 11/7/12), 101 So.3d 593, the defendant questioned whether the appointed physician was qualified by training or

experience in forensic evaluations according to La.Code Crim.P. art. 644(A).  A panel of this court found no abuse of discretion in the trial court's appointment of the physician, who was board certified in internal medicine and had been engaged in the practice of medicine for more than the requisite three years.  *Id.*  The panel noted that the trial court had considered the physician's overall experience and had focused on the fact that the physician had been the Medical Director for a mental treatment facility in which capacity he oversaw the physical examinations of psychiatric patients in combination with the psychiatrist assigned to the patient.  *Id.*  Additionally, the physician had served the trial court on numerous occasions by performing competency evaluations on individuals in litigation.  *Id.*  Prior to the case at issue, the physician had never been appointed to a sanity commission.  *Id.*

Here, we likewise examine Dr. Edwards's overall training and experience to determine whether the trial court abused its discretion in finding Dr. Edwards qualified by training or experience in forensic evaluations as required by La.Code Crim.P. art. 644(A).  According to his testimony, Dr. Edwards graduated from the Louisiana State University Health Science Center in Shreveport in 2009 and has been a licensed physician since 2010.  Dr. Edwards indicated that he has been trained to do mental evaluations, but he has not been formally trained to do forensic evaluations.  At the time of his testimony, Dr. Edwards stated that he had performed six or seven other forensic mental examinations for the trial court in which capacity he was charged with rendering an opinion on the defendant's mental capacity to proceed and the defendant's ability to assist in his defense.  Dr. Edwards also explained that "a large part of - - family practice medicine is psychiatric treatment" and that "[b]oth in medical school and in residency," he did "several months of psychiatric training in performing these exams."  He testified that as a family physician, he has "extensive working knowledge - - working knowledge dealing with all mental illnesses[.]"  Dr. Edwards expounded as follows:

14

[W]e spend approximately [sixteen] weeks during our third year of medical school working extensively in the inpatient and outpatient wards for psychiatry at LSU Health Science Center in Shreveport. In the fourth year, we do some elective work as well I believe about a month or so. And then my three years of residency has been, again, more general psychiatry as it applies to people in the real world, not - - not necessarily in the - - not necessarily inpatient psychiatry or that sort of thing. I do also work - - I did also work in the emergency room. We PEC people, determine whether or not [patients are] a risk to their selves, to others, and perform those evaluations almost daily.

Dr. Edwards testified that for patients who did not require inpatient care, he continued to "see them as outpatients" and to "follow up on their care." Dr. Edwards stated that he diagnoses ailments like schizophrenia and bipolar disorder, treats the patient initially, and continues to provide treatment unless the patient requires advanced care or has not responded well to treatment. Dr. Edwards indicated that "[p]robably a few times a month" he deals with patients who experience issues of hearing voices or auditory hallucinations. Dr. Edwards explained that he has never before been qualified as a forensic expert on mental examinations, and the record does not reveal that Dr. Edwards has ever been rejected as an expert.

At the time Dr. Edwards examined the defendant in June 2015, he had been engaged in the practice of medicine for more than the statutory requisite of three years. As Dr. Edwards testified, his work in medical school, his residency, and his family medicine practice exposed him to opportunities to diagnose and treat psychiatric patients. Further, like the expert in *Rains*, 101 So.3d 593, Dr. Edwards's relevant experience includes having previously performed forensic mental evaluations in other cases for the trial court in which he rendered opinions on the defendant's mental capacity to proceed and the defendant's ability to assist in his defense. The fact that the trial court selected Dr. Edwards as a first time expert does not equate to an abuse of discretion. Rather, having reviewed the transcript in its entirety, we find that the trial court did not abuse its discretion in concluding that Dr. Edwards met the standard of La.Code Crim.P. art. 644(A).

Accordingly, we find no merit in the defendant's final assignment of error.

## DECREE

For the foregoing reasons, the conviction of the defendant, George David Lowdins, is affirmed. The trial court is instructed to correct the sentencing minutes to reflect the transcript that the denial of probation, parole, or suspension of sentence was applied to the defendant's sentence for possession of a firearm by a convicted felon only.

**AFFIRMED.**